LOUIS A. GLADDING *et al. vs.* SAINT MATTHEW'S CHURCH *et al.*

PROVIDENCE—FEBRUARY 3, 1904.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Wills. Legacies. Lapsed Legacies. Corporations. Consolidation. Cy Pres Doctrine.*

Testatrix, by her will, left a fund to "Saint Ann's Church for Deaf Mutes, in the city of New York." Testatrix had been a member, at one time, of this church, and was greatly interested in its work. Prior to decease of testatrix the legatee, under a statute of the State of New York, providing that upon the petition of two incorporated churches the court may make an order for the consolidation of the corporations, specifying the name of such *new* corporation, and when such an order is made the persons constituting such corporations shall become an incorporated church, became consolidated with Saint Matthew's Church, the consolidated corporation taking the name of Saint Matthew's Church and carrying on the work formerly carried on by Saint Ann's Church:—

*Held*, that the original legatee named in the will ceased to exist upon the formation of the new corporation.

Upon the question whether the court could make a *cy pres* application of the gift:—

*Held*, that there was a distinction between the case where the gift was for a particular purpose only and there was no general charitable intention and where it was to charity generally, and pointing out the mode of carrying it into effect. In the latter case, if the mode fails, the court can say that the general purpose of charity shall be carried out.

*Held* further, that in the case at bar the will did not disclose any general charitable intent, it being impossible to determine from the language whether the work or the institution was the more prominent object, and that hence the legacy lapsed.

BILL IN EQUITY to obtain construction of a will.   Heard on bill, answers, and stipulations.

DOUGLAS, J.   This bill is brought by the trustees under the will of Sarah Emeline Acly, to obtain a construction of the will.   The adverse parties in interest are The Rector, Church Wardens, and Vestrymen of Saint Matthew's Church, in the City of New York, a corporation created under the laws of the State of New York, on the one hand, and Joseph C. Sweeney, administrator upon the estate of Albert J. Acly and Horace Hurlbutt, Jr. (the said Acly and Hurlbutt having been the sole heirs-at-law and next of kin of the testatrix at the time of her death), on the other.

The case was heard upon bill and answers, from which, and by stipulation filed, the following material facts appear:

The will was executed November 30, 1888.   After a direction to pay debts, and a provision for the burial of the testatrix, it gives a legacy to her grandson, and then devises and bequeaths the residue of her estate to trustees for the following purposes, namely:   "I direct my said trustees to convert all my diamonds, silverware, and personal effects into money, and to invest the same and re-invest when necessary, in first class real estate mortgages, and to hold the same for and during the natural life of my son, Albert Journeay Acly of said Providence.   And I direct my said trustees to pay the income from said investment unto my said son Albert during his natural life, and at his decease to pay the principal thereof unto Saint Ann's Church for Deaf Mutes in the city of New York, Rev. Thomas Gallaudet being now rector of said church.

"I direct my said trustee, to convert the remainder of all my estate into money and to invest thereof a sum not exceeding six thousand dollars in a house and lot, either in city or country, as my said son Albert may desire, to be used by my said son for his home during his natural life free of rent. And I direct my said trustees to hold said house and lot during the natural life of my son, and to permit him to use the same as aforesaid.   At the decease of my said son I direct my said trustees to convey said house and lot in fee simple unto

said Saint Ann's Church for Deaf Mutes in the city of New York.

"All the rest and residue of my said converted estate I direct my said trustees to invest in United States government bonds, and to pay the yearly income thereof unto my said son Albert Journeay Acly for and during the term of his natural life, and also to pay unto him such portion or portions of the principal thereof as may at any time seem to them necessary on account of sickness of my said son. At the decease of said Albert Journeay Acly, I direct my said trustees to transfer said United States government bonds unto the aforesaid Saint Ann's Church for Deaf Mutes in the city of New York."

January 3, 1898, the testatrix executed a codicil to her will, in which she made no provisions pertinent to this case, except to enlarge the powers of the trustees to appropriate the principal of the trust fund for the support of her son.

Mrs. Acly died February 8, 1902, and her son Albert J. Acly died March 22, 1903.

At the time that the will of Mrs. Acly was executed there was in existence a corporation, organized under the laws of the State of New York, by the name of The Rector, Church Wardens, and Vestrymen of Saint Ann's Church for Deaf Mutes in the City of New York. This church carried on a special and peculiar religious work for the benefit of deaf mutes. It was organized as a Protestant Episcopal church. Of this church Mrs. Acly was at one time a member and communicant, and in it she was greatly interested. Rev. Thomas Gallaudet was, at the time of the will, its rector, and it is admitted that this was probably the corporation intended to be designated by the testatrix by the phrase, "Saint Ann's Church for Deaf Mutes in the city of New York." At the time of the execution of the will this corporation owned a church building on Eighteenth street, near Fifth avenue, in the city of New York. In the year 1895 this corporation sold its church and other property on Eighteenth street, and the church building was torn down. The corporation purchased lots in West 148th and 149th streets, in said city, and had plans prepared for the construction of a new church building thereon. Thereafter, until the year 1897,

the work of the church was to a great extent diminished, but it still maintained services, and the Rev. Thomas Gallaudet continued as its rector.   In the year 1897 this corporation became consolidated with another corporation, known as The Rector, Church Wardens, and Vestrymen of Saint Matthew's . Church, in the City of New York, also a Protestant Episcopal church.   This consolidation was effected in accordance with the laws of New York of 1895, chapter 723, section 12, as amended by the laws of 1896, chapter 56.   As the first step in this consolidation, the two corporations, on the 14th day of June, 1897, made an agreement in writing in which it was recited that they were desirous of uniting and consolidating into a single corporation.   By the terms of this agreement, the name of the consolidated corporation was to be The Rector, Church Wardens, and Vestrymen of Saint Matthew's Church · in the City of New York.   It was to belong to the Protestant Episcopal church in the United States of America.   The new corporation was to assume and carry on the special work among deaf mutes theretofore carried on by Saint Ann's Church, by providing for them sign services and pastoral ministrations, until a building for this special purpose should be ready for occupancy.   The present status and rights of the rector emeritus of Saint Ann's Church were to maintained and continued. The sum of $25,000 was to be utilized in the erection of a church building upon two of the lots owned by Saint Ann's Church, unless it should be determined to sell said two lots, in which event the proceeds were to be devoted to the purchase of another site upon which to erect said church building.   The church building so erected was to be known as Saint Ann's Church for Deaf Mutes in the City of New York, and was to be devoted to the sole and exclusive use of deaf mutes, and to be maintained, so far as not self-supporting, by the consolidated corporation.   This agreement received the approval of the bishop and of the standing committee of the Protestant Episcopal Diocese of New York.   Proceeding in accordance with the statute referred to, both corporations petitione dthe Supreme Court of the State of New York for their "union and consolidation" into a single corporation, and upon these peti-

tions it was ordered and adjudged that the agreement be approved and confirmed, and that the two corporations be " united and consolidated into a single corporation;" which new corporation should be vested with all the estate, rights, and property belonging to either of the petitioning corporations.   Upon the entry of the order of consolidation, the same was recorded in the office of the clerk of the Supreme Court in the manner provided by law, and also in the office of the register of the county of New York.   This record was made in October, 1897.   By this order certain persons, some of whom were vestrymen of the original Saint Matthew's Church, and some of whom were vestrymen of the original Saint Ann's Church, were made vestrymen of the new corporation.   Immediately after the consolidation, the consolidated corporation, one of these respondents, proceeded to carry out the terms of the agreement between the two previous corporations, and in the same year made a contract for the erection of a church building on certain of the lots belonging to Saint Ann's Church on West 148th street, in the city of New York.   The church building was duly erected, and was consecrated by the name of Saint Ann's Church for Deaf Mutes in the City of New York.   The Rev. Thomas Gallaudet was made the rector emeritus of the respondent corporation and the vicar of Saint Ann's Church, which offices he continued to hold up to the time of his death, in the year 1902.   The respondent corporation has ever since carried on, and still carries on, the precise special work for deaf mutes which was formerly carried on by Saint Ann's Church, and the respondent corporation defrays all the expenses of the work.

There now remains in the hands of the trustees of the trust estate, bequeathed by Mrs. Acly, the sum of about $7,500. This fund is claimed by the respondents, Joseph C. Sweeney, administrator, and Horace Hurlbutt, Jr., as intestate estate of Sarah Emeline Acly, and by the respondent corporation, Saint Matthew's Church, as the representative of Saint Ann's Church named in the will.

(1)    It is not disputed, and we have no doubt, upon the facts stated, that the original body whose corporate name was " The Rector, Church Wardens, and Vestrymen of Saint Ann's

Church for Deaf Mutes in the City of New York" was intended by the testatrix as the legatee mentioned in the will by the name "Saint Ann's Church for Deaf Mutes in the City of New York." .

The contest is upon two questions: First, is the respondent, Saint Matthew's Church, entitled to claim the legacy upon the ground that to all intents and purposes it is or comprises in itself the same identical organization to which the will directs the trust fund to be paid?

Secondly, if not, has the legacy to Saint Ann's Church lapsed, or can the trust be administered *cy pres?*

We think the first question can only be answered affirmatively if the original legatee still existed as a legal person after the consolidation of it with the original Saint Matthew's Church. This consolidation was made before the death of the testatrix, and unless the legatee was in being at the time of the death the legacy never vested, and it never acquired any rights to transmit to a successor. What, then, was the legal effect of the consolidation of Saint Ann's Church and Saint Matthew's Church upon the corporate existence of the original bodies?

These corporations were creatures of the laws of the State of New York; they originated and continued by virtue of those laws, and the question must be determined by reference to the law under which they existed. The statute under which the consolidation was made, chapter 56, laws of 1896, which went into effect February 29, 1896, provides that upon petitions by two incorporated churches, and after a hearing, the court may make an order for the consolidation of the corporations, "specifying the name of such *new* corporation," etc. "When such an order is made and duly entered, the persons constituting such corporations shall become an incorporated church by, and said petitioning churches shall become consolidated under, the name designated in the order." . . . "And all the estate, rights, powers, and property of whatsoever nature belonging to either corporation shall, without further act or deed, be vested in and transferred to the new corporation as they were vested in or belonged to the former corporations, and the

said new corporation shall be liable for all the debts and liabilities of the former corporations in the same manner and as effectually as if said debts or liabilities had been contracted or incurred by the new corporation. A certified copy of such order shall be recorded in the book for recording certificates of incorporation in each county clerk's office in which the certificate of incorporation of each consolidating church was recorded," etc.

This statute provides for the creation of a new corporation, and the transfer to it of the membership, property, rights, and obligations of the former corporations.

We do not see how a corporation can be held to exist in law after the power which has created it has taken from it all its membership, property, and powers—everything which constituted its legal personality.

The question arose in *People* v. *Rice*, 11 N. Y. Supp. 249, upon exactly similar provisions in a statute permitting the consolidation of business corporations. The court says: "It is true that the two consolidating bodies were corporations in full life until they formed the new corporation. Then they ceased to exist. It was for this very purpose that they executed the agreement; the purpose to end their own existence and to form a new person. Whenever they form the new corporation their own corporate existence ceases. The new company is not a partnership of the two old companies," citing *Shields* v. *Ohio*, 95 U. S. 319; *Railroad Company* v. *Georgia*, 98 U. S. 359; *Railroad Company* v. *Maine*, 96 U. S. 499; and then referring to the words of the consolidation act, which are the same as those in this act.

This decision was affirmed by the Court of Appeals, 128 N. Y. 591.

In *People* v. *N. Y. C. & St. L. R. R. Co.*, 129 N. Y. 474, the latter court had before them a similar question, and incidentally re-affirmed the decision in *People* v. *Rice*. On p. 482, Judge Andrews says: "This decision accords with the general current of authority to the effect that the statutes for the consolidation of domestic corporations are to be treated as acts of incorporation, and that on consolidation being effected un-

der their provisions, the constituent companies, unless such an intention is excluded by the language of the statute, are deemed to be dissolved, and their powers and faculties to the extent authorized become vested in the consolidated company as a new corporation created by the act of consolidation;" citing, in addition to the cases cited in *People* v. *Rice, Bishop* v. *Brainerd,* 28 Conn. 289; *McMahan* v. *Morrison,* 16 Ind. 172; *Clearwater* v. *Meredith,* 1 Wall. 25; *Central R. R. & B. Co.* v. *Georgia,* 92 U. S. 665.

These authorities are sufficient to support the contention of the heirs-at-law that the original legatee named in the will ceased to exist when the new corporation was formed.

The respondent corporation cites two cases in this connection, but neither of them is in point, upon the construction of the New York statute.

In *Coldwell* v. *Holme,* 2 Sma. & Giff. 31, a society which answered the description in the will had ceased to exist before the will was made, and a society subsequently established for the same purposes, but differently named, was given the legacy. The ground of the decision was that, though imperfectly answering the description, the latter society must have been intended by the testatrix. The vice chancellor says: "It would be proceeding upon a very unsound principle in a case in which there is and was at the date of the will but one society at all answering the description, if, in the absence of any evidence to justify such a conclusion, I were to assume that the testatrix was ignorant that the society of which she has been a member had been dissolved, and ignorant also that there was a society in existence similar in name and identical in purpose."

In *Hosea* v. *Jacobs,* 98 Mass. 65, the question was whether the legatee mentioned in the will had become extinct; and the court held that it still existed. Says Judge Gray, p. 73: "It was strongly argued that although the formal organization of the trustees had been kept up yet they had been dissolved, and had lost their corporate existence by the dissolution of the religious society, to hold and manage the property of which was the sole object of their incorporation. But the facts of the case do not seem to us to support this position."

Nor can it be held that, because a certain department of the work of the respondent corporation is identical with that which was carried on by the legatee, the codicil, of a later date than the date of the consolidation, substituted this branch of the respondent corporation for the corporation named in the will. The codicil does not mention the residuary legatee of the trust fund, and contains nothing to indicate the intention of the testatrix in that regard.

A codicil does not by its republishing operation revive a devise or bequest, the object of which has died in the testator's lifetime. 1 Jar. on Wills, R. & T. ed. 374; *Stillwell* v. *Mellersh*, 20 L. J. Eq. (n. s.) 356; *Rymer* v. *Stanfield*, 1 Ch. Div. L. R. 19 (1895).

We come, then, to the second question, whether or not the case presented demands the exercise of the power of the court to make a *cy pres* application of a charitable gift.

That the gift is a charitable one cannot be contested. It is well settled that a Christian church, lawfully existing, is a charity in the sense of the statute of 43rd Elizabeth, chapter 6; 2 Red. Wills, 501; *Potter* v. *Thornton*, 7 R. I. 252.

But the question is not concluded by that circumstance. Gifts to charitable institutions may lapse, as well as gifts to natural persons.

The law is well stated in *Teele* v. *Bishop of Derry*, 168 Mass. 341, as follows:

"The difficulty in this case, and generally in cases like it, is one of construction—to find out the intention of the testatrix. When that is arrived at, the rules of law which apply seem to be pretty well settled. If it appears from the will that the intention of the testatrix was that her property should be applied to a charitable purpose whose general nature is described so that a general charitable intent can be inferred, then, if by a change of circumstances or in law it becomes impracticable to administer the trust in the precise manner provided by the testatrix, the doctrine of *cy pres* will be applied in order that the general charitable intent which the court regards as the dominant one may not be altogether defeated. . . .

But if the charitable purpose is limited to a particular object or to a particular institution, and there is no general charita-

ble intent, then, if it becomes impossible to carry out the object, or the institution ceases to exist before the gift has taken effect and possibly in some cases after it has taken effect, the doctrine of *cy pres* does not apply—and in the absence of any limitation over, or other provision, the legacy lapses."

Some earlier cases in Massachusetts seem to have given the doctrine of *cy pres* a more general application, *e. g.*, *Winslow* v. *Cummings*, 3 Cush. 358, where the court found, in a bequest to an unincorporated society which had gone out of existence at the date of the will; a gift for the charitable purposes which such organization had promoted. It could not have been construed as a gift to the society as a combination of individuals, for they were not capable in law to take as such. The argument, therefore, was sound that the gift was to the objects of the society, not to itself, and the court might well carry out the intention of the testator by giving the legacy to a trustee. See also *Loscombe* v. *Wintringham*, 13 Beav. 87; *In re Clergy Society*, 2 K. & J. 615; *Marsh* v. *Attorney-General*, 2 J. & H. 61, and comments by Sir J. W. Chitty, J., in *Rymer* v. *Stanfield, supra.*

In *Bliss* v. *Amer. Bible Society*, 2 Allen, 334, the Supreme Court of Massachusetts went further and held, though citing no authority but *Winslow* v. *Cummings:* "The bequest being to a charity, the object of which can be distinctly ascertained, it is valid, and will be sustained by the court, although the legatee is incapable, by reason of original want of corporate capacity, *or from its corporate existence having terminated*, of undertaking to execute the trust."

The rule laid down in *Teele* v. *Bishop of Derry* restricts these general expressions, and is approved in *Bullard* v. *Shirley*, 153 Mass. 559, 560; and, furthermore, it is in accord with the courts and text writers, generally, in England and in this country.

So 2 Perry on Trusts, section 726, states the rule as follows: "If it appears from the construction of the whole instrument that the gift was for a particular purpose only, and that there was no general charitable intention, the court cannot by construction apply the gift *cy pres* the original purpose.

If, therefore, it .appears that the testator had but one particular object in mind, as to build a church at W., and his purpose cannot be carried out, the gift must go to the next of kin. And if the gift cannot vest in the first instance in the donees, for the reason that no such donees can be found, or because a corporation is dissolved, the court cannot appoint other donees *cy pres,*" quoting *Carter* v. *Balfour,* 19 Ala. 814; *Marsh* v. *Means,* 3 Jur. (N. S.) 790; *Attorney-General* v. *Power,* 1 Ball. & B. 145; *Fisk* v. *Attorney-General,* L. R. 2 Eq. 521.

To the same effect see 1 Jar. Wills, 6th ed. 241; 2 Pom. Eq. 2nd ed. 1524; 5 A. & E. Ency. of L. 2nd ed. 939.

The leading case in England is *Clark* v. *Taylor,* 1 Drew. 642, decided in 1853, which held that:

"There is one class of cases in which there is a gift to charity generally, indicative of a general charitable purpose and pointing out the mode of carrying it into effect; if that mode fails the court says the general purpose of charity shall be carried out. There is another class in which the testator shows an intention, not of general charity, but to give to some particular institution, and then if it fails because there is no such institution the gift does not go to charity generally; that distinction is clearly recognized; and it cannot be said that whenever a gift for any charitable purpose fails it is nevertheless to go to charity." "This case," says the lord chancellor, in *Rymer* v. *Stanfield,* 1 Ch. Div. L. R. 19, decided in 1895, "has been followed ever since."

Chief Justice Durfee, in *Pell* v. *Mercer,* 14 R. I. 412, affirms the rule. He says, p. 438: "If, however, the trust is for some particular purpose which has been accomplished before the trust becomes available, or which is impracticable, there a *cy pres* application is more questionable; but even then, if it be clear that *a general charitable intent has simply taken form in a particular purpose,* the court will best carry out the will of the donor by applying his donation to some other purpose which is as nearly as possible akin to the purpose which is named."

Counsel for the respondent corporation refers to several Rhode Island cases.

*Wood* v. *Hammond,* 16 R. I. 108, 113, presented the question as to which of four corporations the testator had designated by the term "The Nursery," no corporation having existed bearing that name at the time when the will was executed. Following the principle of *Winslow* v. *Cummings, supra,* the court held that "evidently the bequest was intended for the benefit of the nursery as a favorite charity, and should go to the corporation as the medium through which the benefit would reach its destination."

*Cady* v. *Children's Hospital and Nursery,* 17 R. I. 207, was simply a case of imperfect designation.

In *Almy* v. *Jones,* 17 R. I. 265, it could not be doubted that the legacy sprang from a general charitable intent if the purpose was a legal charity at all.

In *Saint Peter's Church* v. *Brown,* 21 R. I. 367, the court appointed a trustee to hold a legacy given to an unincorporated religious society.

These cases evidently afford us no assistance in interpreting this will.

To apply the rule to the present case, we do not find in the will of Mrs. Acly any general charitable intention. The legatee named was a church to which she had belonged, and in whose prosperity she took great interest; and it is impossible for us to gather from any of her expressions that she made her gift to the church because it cared for the religious training of deaf mutes, rather than because of her affection for her former associates who composed it. Doubtless the work and the institution were both present in her mind, but who shall say which held the more prominent place? Where the will is silent we are not justified in substituting our arbitrary conjecture.

The case of *Rymer* v. *Stanfield, supra,* is quite similar to this.

The bequest there was "to the rector, for the time being, of Saint Thomas Seminary, for the education of priests in the diocese of Westminster, for the purposes of such seminary, £5,000."

The seminary was discontinued before the testator's death, and the students were removed to another seminary which, as

part of its work, educated priests for the diocese of Westminster; it was held by Chitty, J., that the gift was confined to the particular institution, and lapsed. And this decision was affirmed on appeal.

The case of *Merrill* v. *Hayden*, 86 Me. 133, presents many points of similarity to the case at bar. The bequest to be construed, was:

"I give, bequeath, and devise to my daughter Maria K., all the property of which I shall die possessed, to hold during her life the income thereof and so much of the principal as she shall need to be spent by her; and the residue, both of the principal and income, that shall be left at the decease of said Maria, I give and devise to the Maine Free Baptist Home Missionary Society."

The society named existed at the date of the will; but before the testator's death, by authority of an act of the legislature, it had transferred all its property to the Maine Free Baptist Association; and thereupon, by force of said act, became extinct. The new corporation, as the successor of the old, though having somewhat more extended objects, claimed the legacy; but the court held that "by the extinction of the Maine Free Baptist Home Missionary Society (the legatee named in the will), in the lifetime of the testator, the legacy to that society lapsed to the estate of the testator, and not having been otherwise disposed of by the will it descended to his heirs as undevised estate."

This decision is approved in *Brooks* v. *Belfast*, 90 Me. 318, 329, where the whole subject is exhaustively considered.

We are opinion, therefore, that the legacy lapsed when the corporation known as Saint Ann's Church for Deaf Mutes ceased to exist; and that the fund in question, on Mrs. Acly's death, descended to her heirs-at-law and next of kin as intestate estate.

*Van Slyck & Mumford*, for complainants.

*Comstock & Gardner and Joseph C. Sweeney*, for respondents.