THE MORRISTOWN TRUST COMPANY, executor, &c.,

*v.*

THE MAYOR AND BOARD OF ALDERMEN OF THE TOWN OF MORRISTOWN et al.

[Decided December 20th, 1913.]

1. A bequest appropriated for the erection of a bronze and granite base for the flag staff in the Morristown park when the proper consent shall have been obtained for the erection of the same from the trustees of the park and from the municipal authorities of Morristown, the same to bear an inscription that it was erected in memory of the testator's father, must fail and fall into the residuary estate because it does not come within any of the definitions of charitable uses, nor is it in any sense a devotion of the money therein mentioned to charitable purposes. It is a mere private trust, and is violative of the rule against perpetuities.

2. Trusts for charitable uses defined.

3. The impossibility of procuring the consent of the trustees of the Morristown green or park, and of the municipality, to the erection of the structure provided for in this bequest is another reason why such bequest must fail, the consent of the trustees being made one of the conditions upon which the validity of the bequest depends, without which the physical construction could not be carried on.

4. Another legacy under the same will to the Society for Providing Medical Attendance to the Worthy Poor of the Township of Morris must likewise fail and fall into the residuary estate, it appearing that there was a voluntary association of the residents of Morristown and vicinity called by the name of the intended legatee, which existed from January 14th, 1889, until January 9th, 1911, when it disbanded and thereby became dissolved; the dissolution occurred after the testator's will was executed and after his death, but without any attempt to collect this legacy.

5. There is a distinction well settled by the authorities between the class of cases in which there is a gift of charity generally, indicative of a general charitable purpose, and pointing out the mode of carrying it into effect, and another class of cases which the testator shows an intention, not of general charity, but to give to some particular institution, and then if it fails because there is no such institution the gift does not go to charity generally, and this last bequest is not a bequest to charity generally, but as one to the particular legatee, which terminated its own existence within a year after the testator's death and before the legacy became due and payable according to law.

On final hearing on bill and answers.

*Mr. Willard W. Cutler,* for the complainant.

*Mr. Stephen H. Little,* for the residuary legatees.

*Mr. Carl V. Vogt,* for the town of Morristown.

HOWELL, V. C.

The two legacies in question, under the will of Augustus L. Revere, must fail, and the amounts thereof must revert to the residuary fund. The first legacy appropriates $5,000 for the erection of a bronze and granite base for the flag staff in the Morristown park when the proper consent shall have been obtained for the erection of the same from the trustees of the park and from the municipal authorities of Morristown; the same to bear an inscription that it was erected in memory of the testator's father. This bequest must fail because it does not come within any of the definitions of charitable uses, nor is it in any sense a devotion of the money therein mentioned to charitable purposes. It is a mere private trust, and is violative of the rule against perpetuities. Mr. Justice Gray, of the Massachusetts supreme court, in *Jackson* v. *Phillips, 96 Mass. 539,* defines a charity as follows: "A charity in its legal sense may be more fully defined as a gift to be applied consistently with existing laws for the benefit of an indefinite number of persons either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies of disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it be so described to show that it is charitable in its nature." This definition was approved by our court of errors and appeals in *MacKenzie* v. *Trustees, 67 N. J. Eq. (1 Robb.) 652.* Lord Macnaghten, in *Commissioners of Income Tax* v. *Pemsel (1891), A. C. 531; 61 L. J. Q. B. 290,* defines trusts for charitable purposes as follows:

(1)  Trusts for the relief of poverty.

(2)  Trusts for the advancement of education.

(3)  Trusts for the advancement of religion.

(4)  Trusts for other purposes beneficial to the community not falling under any of the preceding heads and not being for the purpose merely of sport or hospitality.

It is quite apparent that this bequest does not fall within either of the above definitions.

There is another reason, however, which must be looked at, and that is the impossibility of procuring the consent of the trustees of the Morristown green or park, and of the municipality, to the erection of the structure provided for.  The facts are that the consent of the trustees was sought; that they entertained an application for permission to make the construction in accordance with the terms of the will; that the same was considered and discussed by them, and was finally refused.  This state of facts brings the case within *Teele* v. *Bishop of Derry, 168 Mass. 341,* where a legacy failed, very largely because the bishop of the diocese refused to assist in maintaining a chapel or supporting a priest, and that without his help the people could do neither.  That situation is analogous to the one now in hand, for the reason that the consent of the trustees is made one of the conditions upon which the validity of the legacy depends, besides which the physical construction could not be carried on without their consent.  Their refusal, therefore, operates as a rejection of the legacy.  If there were no other reason for its invalidity, this makes it impossible of enforcement, and for this reason also it must fail.

The other legacy to the Society for Providing Medical Attendance to the Worthy Poor of the Township of Morris must likewise fail, but for a different reason.  It appears by the allegations of the pleadings that there was at one time a voluntary association, composed of residents of Morristown and vicinity, called the Society for Providing Medical Attendance to the Worthy Poor of the Township of Morris, which existed from January 14th, 1889, until January 9th, 1911, when it disbanded, and thereby became dissolved.  This dissolution occurred after

the testator's will was executed and after his death, but without any attempt to collect the legacy.

In *Brown* v. *Condit, 70 N. J. Eq. (4 Robb.) 440,* Vice-Chancellor Stevenson dealt with bequests to legatees who were not in existence either at the date of the will or at the date of the testator's death, and held that in either of those two cases the legacy, even though charitable, would lapse, and the amount thereof would fall into the residue. In the case at bar, the legatee did not go out of existence until about eight months after the testator's death; the members then having full knowledge of the bequest, voluntarily dissolved, although it might possibly have continued its existence and in some way have taken advantage of the bequest.

This action of the legatee seems to have the effect of a rejection of the legacy, and, if so, is the fund to be administered *cy pres,* or does it fall into the residue? The solution of this question involves a consideration of the intention of the testator; the point is well illustrated by the opinion of Vice-Chancellor Kindersley in *Clark* v. *Taylor, 1 Drew. 642.* There the testator bequeathed a legacy of fifty pounds to the treasurer for the time being of the female orphan school in Greenwich, patronized by Mrs. Enderby, for the benefit of that charity. The will was made in March, 1839; he died in October, 1840. Mrs. Enderby continued to carry on her school until November, 1846. The bequest not having been paid, the question was whether it failed, and whether it was dedicated to charity and was to be disposed of *cy pres.* The vice-chancellor held that the bequest failed entirely, and that it became part of the residue. He says: "The question is whether the gift in this will is to be considered as a gift intended for charitable purposes generally, or whether it was simply intended for the benefit of a particular private charity.

"Now, there is a distinction well settled by the authorities. There is one class of cases in which there is a gift to charity generally, indicative of a general charitable purpose, and pointing out the mode of carrying it into effect. If that mode fails the court says the general purpose of the charity shall be carried out.

There is another class in which the testator shows an intention, not of general charity, but to give to some particular institution, and then if it fails because there is no such institution, the gift does not go to charity generally. That distinction is clearly recognized, and it cannot be said that wherever a gift for any charitable purpose fails it is nevertheless to go to charity." The vice-chancellor then holds from the particular words of the gift that there was no contemplation of a charitable purpose generally, but that a benefit to the particular school mentioned was intended. And so I read the bequest in question in this case, not a bequest to charity generally, but as one to the particular legatee, which terminated its own existence within a year after the testator's death and before the legacy became due and payable according to law. *In re University of London (1909)*, *2 Ch. 1.*

It has been said that *Clark* v. *Taylor (1853)*, *supra*, was in opposition to the decision of Sir John Leach, master of the rolls, in *Hayter* v. *Trego, 5 Russ. 113*, in which, on similar facts, the master of the rolls administered the fund *cy pres;* but it will be found upon careful reading of the cases that in *Hayter* v. *Trego* there was a general charitable intention expressed by the will which would be sufficient to control the decision. *Clark* v. *Taylor, supra*, was followed by *In re Ovey, Broadbent* v. *Barrow, 29 C. D. 560; 54 L. J. Ch. 752*, and by *In re Rymer* v. *Stanfield (1895), 1 Ch. 19; 64 L. J. Ch. 86*, in the court of appeals.

Again, there is no scheme furnished by the testator for the administration of the fund, provided it were held valid. There is no use defined nor any term fixed within which the money shall be expended, nor any establishment of an endowment to the extent of the gift, and thus the purposes of the gift are indefinite and uncertain and could not be effectuated without the formulation of a scheme by the court for the administration of the fund. While this would not be an insuperable objection, it is one which presses itself upon my attention.

The trustee under the will of the deceased will be instructed accordingly.