This bill is filed by executors for the construction of a will.
Julia P. Weltz, deceased, by the seventh section of the will in question, provided as follows:
"I give and bequeath all the residue and remainder of my estate, of whatever it may consist or wherever situated, unto the Gewerbschule, of the city of Speyer, Germany, or to whom governs or controls the *Page 448 
same to be used in said Gewerbschule for the acquisition of machinery, instruments and equipments of a workshop to aid in the practical application of scientific studies to be pursued therein, or to create a fund from the interest of which new appliances or instruments can be from time to time acquired, so as to aid in the study of natural sciences and astronomy, or to enable new discoveries in any of these to be experimented on or to be practically applied.
"This is to be called the `Johann David Weltz Stiftung' in memory of my deceased husband. Provided, however, that should the Gewerbschule of the city of Speier, Germany, or who governs or controls the same, decline to receive the bequest on account of insufficiency of means, let the bequest be applied as far as it goes; but should it be declined for any other reason whatever in that case this legacy shall cease and be considered void and of no effect, the same as if same had never been made; and the residue and remainder so declined as aforesaid, I, in that case, give and bequeath all the aforesaid residue and remainder of my estate, of whatever it may consist or wherever situated, unto the Protestant Orphan Asylum of the city of Spever, Germany, to be used in the creation of a fund from the interest of which any of the pupils among the wards of the asylum, male or female, who show particular talent for any of the arts and sciences, shall be allowed to study said art or science so as to enable them to acquire a practical knowledge thereof and to earn a livelihood thereby. Should these at any time be willing to show their appreciation of the benefits received and be in condition to do so, they might regard this help as a loan and return it to the asylum so as to aid others in the same way. This is to be called the `Johann David Weltz Stiftung.'"
There are four claimants, namely — (1) the heirs-at-law; (2) the Gewerbschule of the city of Speyer; (3) the Protestant Orphan Asylum of the city of Speyer, and (4) the alien property custodian.
I do not think that the bequest to the Gewerbschule can be sustained. It appears that this class of schools was either initiated or its scope and usefulness greatly enlarged at the beginning of the nineteenth century, so that the youth of Germany might be educated more efficiently in the application of the arts of manufacture and the elevation of mechanical instruction, so that the competition of other countries might be more effectively met. Another class of schools in the German empire were known as Realeschule, and was designed to fit its pupils with a higher education in which the future merchant, the banker and the candidate for postal and railway employment were educated. In the beginning of the latter half of the nineteenth century important changes *Page 449 
were adopted in public instruction of Germany, and the course pursued in the old Gewerbschule was lengthened and changed into the Realeschule, to all intents and purposes. Therefore, when the testatrix died there was no such institution in the city of Speyer as the Gewerbschule, and, thus, so much of the residuary clause as was intended to benefit that defunct institution fails.
With regard to the claim of the Protestant Orphan Asylum, a like conclusion must be reached. The only witness who testified was one of the executors, who had gone abroad to seek information as to the intended objects of the testatrix's bounty. He testified that in the city of Speyer he found a building with the legend upon it, "Orphan Asylum;" that there was another similar institution operated exclusively for the benefit of children of the Catholic persuasion; that the former shelters both Protestants and Catholics, as well as Jews. It is most significant that this asylum is now a nonsectarian institution, governed exclusively by the municipality of Speyer, and that its name, when translated, is "Municipal Orphange."
On July 12th, 1918, the alien property custodian caused a demand to be served under the "Trading with the Enemy act," upon the complainants, as executors of the decedent's estate, by the terms of which they were required to convey, transfer, assign, deliver and pay over all money and property bequeathed to the two institutions just dealt with, and payable to the city of Speyer, and certain individual beneficiaries of the will. This, of course, was upon the ground that they and each of them were alien enemies, not provided with a license under the provision of the act of congress. Were this so, it seems indisputable that the position of the alien property custodian would be impregnable; but, inasmuch as it has already been held that the Gewerbschule and the Protestant Orphan Asylum, as distinguished from the other beneficiaries, do not exist, and, therefore, cannot benefit, his position is not sound. Under the circumstances, the cases cited by his counsel are not applicable to these facts. So far as demand is made for the transfer of property held *Page 450 
by the executors for the benefit of alien enemies is concerned, I agree that it entitles him to possession under the statute. But so far as a demand for the transfer of property under a void bequest as above shown, it does not bind this court in any degree. It is the province of the alien property custodian to impound all property actually and beneficially belonging to an alien enemy, but it is the duty of this court to construe the will and determine whether or not an institution is entitled to benefit thereunder.
Therefore, the attempted bequests in the seventh paragraph having failed, the testatrix died intestate as to the residuum, and the executors should distribute the same in accordance with the legislative enactment.
At the final hearing, testimony of extrinsic facts was admitted over the objection of counsel for the next of kin of the decedent. This was done provisionally, however, because of confusion in my mind as to whether or not the same was admissible under the rules. I am convinced that it is not, for the reason expressed in Wigm. Ev. § 2472. However, this is of no moment because of the decision to which I have come.
It is also argued that, under the doctrine of cy pres, effect should be given to the gifts in the alternative to either the Gewerbschule or the orphan asylum. I do not think so. That doctrine is only applicable to technical charitable trusts. The distinction will be found in the opinion of Lord Thurlow inCorbyn v. French, 4 Ves. Jr. 419. It was there pointed out that if it is clearly to be seen that the testator had but one particular object in his mind, and that purpose cannot be answered, the next of kin will take, there being in such case no general charitable intention. Of course, in the present instance there were two objects named, but, clearly, they were in the alternative and, each being considered separately, disclose no case susceptible to an application of the doctrine of cy pres.
"But if the charitable purpose is limited to a particular object or to a particular institution, and there is no general charitable intent, *Page 451 
then, if it becomes impossible to carry out the object, or the institution ceases to exist before the gift has taken effect, and possibly in some cases after it has taken effect, the doctrine ofcy pres does not apply, and in the absence of any limitation over, or other provision, the legucy lapses. Charities, 5R.C.L. § 108.
I will advise a decree directing the executors to distribute the shares that would have gone to the Gewerbschule or the orphan asylum to the next of kin.