The complainant seeks instructions on questions with which it is confronted in the administration of the decedent's estate and of the trusts under his will.
The decedent, a resident of the Borough of Tenafly in Bergen County, New Jersey, died August 28th, 1938. His will was probated in the Prerogative Court of this State. In March, 1939, the executors and trustees under the will brought suit in this court for a construction of the testament and for instructions as to questions which had arisen in the course of the administration of the estate. The court's opinion is reported in 127 N.J. Eq. 287;12 Atl. Rep. 2d 882, and the decree (Exhibit C-2) was signed June 13th, 1940.
The defendants Katherine Wenner and Walter Laise are the mother and brother of the testator. The defendant Johanna Laise is the wife of Walter Laise aforesaid, and the defendants Katherine Laise and Elizabeth Laise are the daughters of Walter Laise, and nieces of the testator. The defendants are beneficiaries of the residuary trust under Article Thirteenth of the will. *Page 368 
The defendant The Trustees of The University of Pennsylvania is the ultimate beneficiary of three-fifths of the income of the residuary trust.
The complainant asks what disposition is to be made of the testator's homestead property in Tenafly, and of the residue of the testator's estate under the provisions expressed in the Eleventh and Thirteenth articles of the will, which read as follows:
"Eleventh: I give, devise and bequeath unto my beloved wife, Elizabeth Marie Laise, for and during the term of her natural life, our home in Tenafly, New Jersey, together with lots No. 1 and No. 2 in Block Five (5) on map entitled `Third Amended Map of Highwood Heights, made for Malcolm S. Mackay, Tenafly, Bergen County, New Jersey' located on the Easterly side of Knickerbocker Road, at the corner of Oak Avenue; together with all furniture, furnishings, household effects and equipment therein.
"After the death of my beloved wife, I direct the trustees hereinafter named to convey said property to the American Chemistry Society of New York, together with all the furniture, furnishings, household effects and equipment therein, for the purpose of establishing a home for aged scientists. If said society shall accept said devise and shall establish such a home for aged scientists, then I direct that there shall be paid to the American Chemistry Society of New York, out of my residuary estate, the sum of Four Thousand Dollars per year for the maintenance of said house and grounds and the payment of insurance, taxes, if any, and other necessary charges for the upkeep and maintenance thereof.
"If the said American Chemistry Society of New York shall not deem the plan of maintaining a home for aged scientists a feasible one, or for any other reason shall refuse to accept said devise, then I authorize, empower and direct said trustees to turn over said property to a christian denomination to be selected by them, for the maintenance of a home for orphan children; and for the maintenance of such home when established, I direct that there shall be paid out of my estate the sum of Four Thousand Dollars per year."
"Thirteenth: All the rest, residue and remainder of my estate, both real, personal and mixed, of which I am now seized or possessed, and of which I may hereafter become seized or possessed, including all property over which I have the right of appointment, particularly that under a trust agreement dated January 7, 1931, into which I entered with The Trust Company of New Jersey as Trustee, I give, devise and bequeath to my executors and trustees hereinafter named, as trustees, to have and to hold the same upon the following trust:
"a. To set aside a sum sufficient to produce an income of Five Hundred Dollars per year for the payment provided in paragraph `Tenth' hereof. *Page 369 
"After my son reaches the age of thirty years, or having died before reaching that age, then, after the death of my wife and my mother, the sum so set aside shall be added to the balance of the principal of the trust.
"b. After the death of my wife to set aside a sum sufficient to produce an income of Four Thousand Dollars per year for the payment provided in paragraph `Eleventh' hereof; and until that time said income shall be distributed as part of the trust hereinafter set up.
"c. To invest and reinvest the balance of the principal and to collect the interest, dividends, rents, issues and profits therefrom.
"d. To pay three-fifths of the entire net income from said trust, quarter-annually, to my beloved wife, Elizabeth Marie Laise, for and during the term of her natural life.
"To pay one-fifth of the entire net income from said trust, quarter-annually, to my mother, Katherine Wenner, for and during the term of her natural life; and
"To pay the remaining one-fifth of the entire net income, quarter-annually, to my brother, Walter Laise, for and during the term of his natural life.
"e. After the death of my said wife to pay two-fifths of the entire net income of said trust, quarter-annually, to my son, Clemens J. Laise, for and during the term of his natural life. The remaining one-fifth of the entire net income of the share which was payable to my said wife during her life is to be paid to the University of Pennsylvania, of Philadelphia, Pennsylvania, in the proportions and for the purposes set forth in subdivision `f' hereof.
"After the death of my mother, the one-fifth of the entire net income of the estate which was payable to her during her life shall also be paid to the University of Pennsylvania, of Philadelphia, Pennsylvania, in the proportions and for the purposes set forth in subdivision `F' hereof.
"After the death of my brother, Walter Laise, the one-fifth of the entire net income payable to him during his life shall be divided into four equal parts and one of said parts shall be paid to Johanna Laise, wife of my said brother; one thereof to Katherine Laise, his daughter; one thereof to Elizabeth Laise, his daughter, and the remaining part thereof to G. Walter Laise, his son, for and during their respective natural lives. As each of them shall die, the income payable to the one so dying shall be paid to the University of Pennsylvania in the proportions and for the purposes set forth in subdivision `F' hereof.
"f. The income payable to the University of Pennsylvania on the death of the beneficiaries in this paragraph mentioned shall be applied by said University as follows:
"Fifty per cent thereof to the said University for the John Harrison Laboratory of Chemistry and the University hospital, share and share alike;
"Twenty per cent thereof for endowments to establish scholarships for the study of diseases such as asthma, hay fever, infantile paralysis, etc. *Page 370 
"Fifteen per cent thereof for endowments to establish scholarships for scientific research problems in the field of chemistry, especially radio television; and
"The remaining fifteen per cent thereof for endowments for scholarships for the study of music, art or painting.
"If the University of Pennsylvania shall decline to accept these endowments, then the trustees shall pay the same to such university as they shall deem advisable, and which shall accept and carry out the purposes thereof."
The testator's widow, Elizabeth Marie Laise, died January 9th, 1944. In the opinion of this court, reported as aforesaid, the devise of the Tenafly real estate to the American Chemistry Society of New York under Article Eleventh of the will, and the trust for its benefit under paragraph b. of Article Thirteenth of the will, were declared to have failed. The final decree aforesaid provided upon the death of the testator's widow, complainant should convey the Tenafly real property and its furnishings to a Christian denomination to be selected by it that will operate and maintain a home for orphan children. It was further advised that upon the death of the said Elizabeth Marie Laise, to set aside a sum sufficient to produce an income of $4,000 per annum and pay the same to the aforesaid Christian denomination for the maintenance of such a home and establishment. The situation existing at the present time is such that the direction of the court as aforesaid cannot be complied with. A zoning ordinance is in effect in the Borough of Tenafly which prohibits the establishment of an orphans' home in the place where the testator's property is located. The ordinance limits the buildings to one-family residences only, and the borough officials have refused to rezone the property so that a building within the district may be used for an orphans' home. The consequences are that the particular objects for which the testator devised the remainder interest in the property as aforesaid after his wife's life estate are impossible of fulfillment.
The evidence discloses that the value of the testator's personal estate at the time of his death was approximately $215,000; that after the payment of his debts, funeral expenses, inheritance and estate taxes, legacies and administration expenses, the value of the residuary estate presently in *Page 371 
the hands of the complainant is approximately $100,000; and that a perpetual trust with a corpus of $100,000 cannot be properly invested to produce an annual income of $4,000. The present annual income of the residuary estate appears to be less than $4,000. Under those circumstances, I believe that the gifts contained in Article Eleventh and paragraph b. of Article Thirteenth fail entirely.
I do not feel that the subject-matter of the gifts may be extended to other charitable purposes under the cy pres
doctrine. The cases appear to sustain such conclusion. SeeMacKenzie v. The Trustees of the Presbytery of Jersey City,67 N.J. Eq. 652; 61 Atl. Rep. 1027; Brown v. Condit, 70 N.J. Eq. 440; 61 Atl. Rep. 1055; Morristown Trust Co. v. Morristown,82 N.J. Eq. 521; 91 Atl. Rep. 736; Raque v. City of Speyer,Germany, 97 N.J. Eq. 447; 129 Atl. Rep. 207; Teele v. Bishop ofDerry, 168 Mass. 341; 47 N.E. Rep. 422; 38 L.R.A. 629;60 Am. St. Rep. 401 (cited with approval in Brown v. Condit andMorristown Trust Co. v. Morristown, supra). In Gilman v.Burnett (Sup. Jud. Court of Maine, 1917),102 Atl. Rep. 108, after quoting from Teele v. Bishop of Derry, supra, the court said:
"In that case the court found no general charitable intent, but a bequest for the particular purpose designated. Other illustrations are Bowden v. Brown, 200 Mass. 269;86 N.E. Rep. 351; 128 Am. St. Rep. 419, before cited; Atty. Gen. v. Hurst,2 Cox Ch. Cas. 369, where the gift was for the building of a church in a specific place; Gladdings v. St. Matthew's Church,25 R.I. 628; 57 Atl. Rep. 860; 65 L.R.A. 225;105 Am. St. Rep. 904; 1 Ann. Cas. 537.
"The same distinction between a general charitable intent and a particular charitable gift has always been recognized and applied by this court in accordance with the purpose disclosed in the particular will under consideration, such general intent being discovered and therefore the cy pres doctrine applied as inLynch v. Cong. Parish, 109 Me. 32; 82 Atl. Rep. 432, and only a special gift being found and therefore the cy pres doctrine rejected as in Merrill v. Hayden, 86 Me. 133;29 Atl. Rep. 949, and Brooks v. Belfast, 90 Me. 318; 38 Atl. Rep. 222. *Page 372 
We search in vain in the will in the pending case for evidence of any general charitable intent on the part of the testatrix. The words in every portion preclude such an inference. * * * There is nothing to indicate that the testatrix intended to make any provision for the recipients of her bounty unless they could be provided for in her old home, the spot that she loved and thought so beautiful. Her charitable purpose was linked with the particular farm which constituted the subject of her bounty. The exact location provided for in the will was the paramount consideration in her thought, and a general provision for the beneficiaries would seem to be quite beyond her contemplation. This case is therefore to be sharply distinguished from the line of decisions cited by the learned counsel for the plaintiff, in all of which the court found a general charitable purpose, such as Osgood v. Rogers, 186 Mass. 238; 71 N.E. Rep. 306;Richardson v. Mullery, 200 Mass. 247; 86 N.E. Rep. 319; Grimke
v. Atty. Gen., 206 Mass. 49; 91 N.E. Rep. 899; Norris v.Loomis, 215 Mass. 344; 102 N.E. Rep. 419, and Lynch v. Cong.Parish, 109 Me. 32; 82 Atl. Rep. 432.
We are therefore of opinion that it is impracticable and impossible to execute the particular charity for which provision is made; that the doctrine of cy pres cannot be invoked; that the gift fails, and the property in question must pass to the next of kin as intestate property."
In 3 Scott on Trusts 2098 § 399, the principle of the foregoing cases is stated as follows:
"It is not true, however, that a charitable trust never fails where it is impossible to carry out the particular purpose of the testator. In some cases, as we shall see, it appears that the accomplishment of the particular purpose and only that purpose was desired by the testator and that he had no more general charitable intent and that he would presumably have preferred to have the whole trust fail if the particular purpose becomes impossible of accomplishment. In such a case the cy pres
doctrine is not applicable."
In the instant case the testator's intention as to the Tenafly real property and the trust for its maintenance was limited to the use of that property solely for the charitable purposes mentioned in the will and no other charitable purpose. In *Page 373 
creating the maintenance trust he contemplated only the physical upkeep and maintenance of his residence aforesaid. This was made clear by the language of the gift to the American Chemistry Society of New York of the sum of $4,000 "for the maintenance of said house and grounds and the payment of insurance, taxes, if any, and other necessary charges for the upkeep and maintenance thereof." It can not be construed that the gift was for the general support and maintenance of any charitable institution. It was made expressly for the maintenance of the particular house and grounds.
The gift of $4,000 a year to the American Chemistry Society of New York was made on the condition that "If said society shall accept said devise and shall establish such a home for aged scientists." In the alternative it is directed that the sum of $4,000 be paid to a Christian denomination "for the maintenance of such home [orphans' home] when established." The words used in the gifts are clearly conditional, and the testator made the gifts on condition that "such home be established."
It is obvious that the testator had no intention to benefit either aged scientists or orphan children, or any objects of charity, other than those who might be afforded a home in the place which had been his residence. In making the gift, he had no general charitable intention with respect to the relief of aged scientists or orphan children. In the circumstances the doctrine of cy pres is inapplicable to the instant case and accordingly, the gifts fail.
On January 7th, 1931, the testator created an inter vivos
trust agreement with the Trust Company of New Jersey as trustee. Under that agreement he reserved the income to himself for life and also reserved the general power of appointment over one-half of the corpus upon the termination of the trust. The agreement provides that upon his death the income of the trust is distributable in different amounts under various contingencies to his wife, Elizabeth Marie Laise, his foster son, Clemens J. Laise, his mother, Katherine Wenner, and his nephew, "Wenner" or Walter Laise, and upon the death of the survivor of those persons the corpus is distributable one-half to the University of Pennsylvania to be added to *Page 374 
its general endowment and one-half under the power of appointment which the testator could exercise during his life or by his will. Of the four income beneficiaries named by the testator, his wife and his nephew are now deceased. The trust continues during the lives of his mother and his foster son.
Since the testator reserved the income of the trust to himself for life, and also reserved a power of appointment over half of the corpus, it is my opinion that the inter vivos trust should be considered in conjunction with the testator's testamentary plan.
The first nine articles of the testator's will bequeath legacies to his brother, Hans, and to the children of such brother; general legacies aggregating $7,700 to friends and the testator's sister-in-law, and specific legacies of certain bank accounts and of tangible personal property to Clemens J. Laise and Elizabeth Marie Laise.
By the Tenth Article of his testament he devises property located in Haworth, New Jersey, to Clemens J. Laise when he attains the age of 30 years with contingent gifts of life interest therein to Elizabeth Marie Laise and Katherine Wenner, and a contingent remainder fee to the testator's brother, Walter Laise. However, the testator and his wife held that property as tenants by the entirety. This article of his will requests his wife to convey the property to the trustees under the will. Article Eleventh thereof devises the Tenafly residence to Elizabeth Marie Laise for life and then contains the charitable gifts now under consideration. Article Thirteenth is the residuary provision of the will.
The residuary trust became effective upon the death of the testator, and the trustees were directed to set apart the trust for the purposes stated in Article Eleventh after the death of his wife.
The complainant desires to ascertain whether or not the devisee of the Tenafly real property is entitled to have the mortgage encumbrances on the property at the time of the testator's death paid out of other assets of the testator's estate. The mortgage is dated January 2d 1932, prior to the date of the will. It was executed by the testator and his wife to *Page 375 
secure the payment of the testator's sole bond to the Haworth Securities Corporation bearing the same date in the principal sum of $13,000, payable January 2d 1937, with interest at 6% per annum. The testator organized the company. It is a personal holding company, and of the outstanding shares of stock the testator held 557 1/2 shares; his wife, Elizabeth Marie Laise, held 937 1/2 shares; and his mother, Katherine Wenner, held five shares.
The testator's widow, Elizabeth Marie Laise, accepted the life estate in the real property devised to her under Article Eleventh of the will, and her executors in paragraph 9 of their answer to the bill of complaint herein, admit that as life tenant she was required to pay taxes, repairs, and interest on the mortgage during the period of her life tenancy, but they claim she was not chargeable with interest on the bond and mortgage which accrued before her possession and that she was under no obligation to pay the principal sum of the mortgage.
The court at the final hearing ruled that it would not determine the validity of the mortgage debt or the amount due thereon; that those questions would be left for determination in some other proper suit.
The remaining question is whether the devisee of the real estate was entitled to exoneration of the mortgage debt out of the personal estate or whether the devisee takes the property subject to the mortgage debt.
R.S. 3:26A-1 provides:
"When real estate subject to a mortgage descends to an heir or passes to a devisee, such heir or devisee shall not be entitled to have such mortgage discharged out of the personalty or any other real estate of the ancestor or testator, but such real estate so received by him shall be primarily liable for the mortgage debt, unless the will of the testator shall expressly or impliedly direct that the mortgage be otherwise paid."
The devise of the Tenafly real estate to the testator's widow for life was one within the meaning of the statute. The will is silent as to the payment of the mortgage. There is no provision therein from which it can be implied that the mortgage debt can or should be paid from any assets other than *Page 376 
the mortgaged property. A general direction to the executors to pay the debts and funeral expenses of the testator as expressed in Article First of the testator's will, under the authorities, is not sufficient to bring the gift within the exception stated in the statute. Swetland v. Swetland, 100 N.J. Eq. 196;134 Atl. Rep. 822; Commonwealth-Merchants Trust Co. v. Seglie,127 N.J. Eq. 160; 12 Atl. Rep. 2d 153; Norris v. Pellinger,133 N.J. Eq. 209; 31 Atl. Rep. 2d 398. The quoted statute does apply in the present case; consequently, the devisee of the Tenafly real property is not entitled to exoneration from the mortgage debt.
Another question is submitted by the complainant as to the disposition of the payments of $500 per year under Article Tenth of the will, which reads as follows:
"Tenth: I direct my executors and trustees hereinafter named to pay to my wife, Elizabeth Marie Laise, as and from the time of my death, the sum of Five Hundred Dollars per year in semi-annual payments, for the maintenance of my house in Haworth, New Jersey, until my son, Clemens J. Laise shall attain the age of thirty years. When my said son attains the age of thirty years, then I direct that said property shall be conveyed to him and his heirs and assigns forever, free and clear of all liens and encumbrances; and I request my beloved wife to convey her interest in said property, whether dower or otherwise, to the trustees hereinafter named so that they may be able to convey to my said son a good and sufficient title, in fee simple, to said property.
"If my said son shall die before attaining the age of thirty years, then I direct that my said wife shall have the use of said house for and during the term of her natural life, together with the income aforesaid for the maintenance thereof. If my said son shall die before reaching the age of thirty years, then, after the death of my said wife I direct that my mother shall have the use of said property and the income for maintaining the same for and during the term of her natural life.
"If my said son shall die before attaining the age of thirty years, then, after his death, the death of my said wife and the death of my mother, I give, devise and bequeath said property, free and clear of all liens and encumbrances, to my brother, Walter Laise, and his heirs and assigns forever."
The residue of the estate is given to the trustee for several purposes, the first of which is stated in subparagraph a. of Article Thirteenth, as follows: *Page 377 
"a. To set aside a sum sufficient to produce an income of Five Hundred Dollars per year for the payment provided in paragraph `Tenth' hereof.
"After my son reaches the age of thirty years, or having died before reaching that age, then, after the death of my wife and my mother, the sum so set aside shall be added to the balance of the principal of the trust."
The Haworth real estate, as hereinbefore stated, was owned by the testator and his wife as tenants by the entirety, and that appears to be the reason for the testator's request to his wife to convey the property to the trustees so that they could observe the provisions of that Article. In paragraph 4 of the aforesaid final decree, it is provided:
"4. Upon the defendant Elizabeth Marie Laise conveying by good and sufficient deed to the complainant, as surviving trustee under the will of Clemens A. Laise, deceased, the house in Haworth in the County of Bergen and State of New Jersey, referred to in clause Tenth of the will, in fee-simple, reserving, however, to the said Elizabeth Marie Laise the use and occupation of the said house until Clemens J. Laise shall attain the age of thirty years, or shall die before having attained such age then the complainant shall be obliged to pay the said Elizabeth Marie Laise five hundred dollars ($500.00) a year, in semi-annual payments, for the maintenance of the said house until Clemens J. Laise shall attain the age of thirty years, and during the life of the said Elizabeth Marie Laise if Clemens J. Laise should die before having attained the age of thirty years."
On December 29th, 1940, Elizabeth Marie Laise by deed conveyed the property to the complainant as surviving trustee under the will of Clemens A. Laise, deceased. The deed reserved to the grantor "the use, occupation and income of the premises" in accordance with the will of the testator and paragraph 4 of said decree. Clemens J. Laise at the time of the death of Elizabeth Marie Laise on January 9th, 1944, had not attained the age of 19 years. He will become 30 years of age in February, 1955.
The complainant consequently seeks instructions on these questions: *Page 378 
"(1) Whether complainant herein, or some other person or persons, shall be appointed in the place and stead of Elizabeth Marie Laise to act with respect to the property in Haworth, from January 9th, 1944, the date of death of Elizabeth Marie Laise, until February, 1955, at which time Clemens J. Laise attains the age of thirty years;
"(2) Whether the complainant, or some other person or persons, shall receive the $500 a year allowed under the will to Elizabeth Marie Laise, or does the payment of $500 cease entirely at the death of Elizabeth Marie Laise."
The trust did not terminate on the death of Elizabeth Marie Laise. If Clemens J. Laise should die before attaining the age of 30 years, the testator's mother will have a life estate in the property with the right to receive the $500 payments during such life estate; and the testator's brother, Walter Laise, will be entitled to a remainder in fee in the property and the right to receive it free and clear of encumbrances.
Clemens J. Laise in his answer and counter-claim asserts that he is the equitable owner of the Haworth property and is entitled to possession and the increments and the annual payments of $500 from January 9th, 1944, until he reaches the age of 30 years or dies before that time. Article Tenth of the testator's will does not specify that the sum of $500 annual payments shall be made to him. He receives nothing until he attains the age of 30 years. He is the beneficiary of an executory devise only when and if he attains that age. In the interim the title is in the trustee under the will, subject to the estate reserved by Elizabeth Marie Laise. The claim of Clemens J. Laise, therefore, is without basis or right. It is my feeling that it is not necessary that a trustee be appointed to receive and administer the payments of $500 a year. The trust with respect to those payments should devolve upon the trustee under the will. The complainant is directed to apply the sum, or such part thereof as being necessary, to the payment of taxes, insurance premiums, repairs, and other carrying charges of the property. Any part thereof not required for such payments shall be held to be income of the residuary trust. *Page 379 
The fourth question submitted by the complainant is whether the federal estate taxes and New Jersey inheritance taxes levied against and paid by the executor by reason of the action of the taxing authorities in including in the gross taxable estate of the testator the value of the assets in the inter vivos trust created by the testator on January 7th, 1931, are payable out of the estate of the testator, or whether the executor is entitled to be reimbursed for such taxes by the trustee of the intervivos trust or the beneficiaries thereof.
The principles here involved seem to be well summarized in the case of Montclair Trust Co. v. Spadone, 139 N.J. Eq. 7;49 Atl. Rep. 2d 497. Vice-Chancellor Bigelow in that case, among other things, said:
"In case of intestacy, or where the will contains nothing to the contrary, the state tax, which is assessed against each transfer separately, is payable ultimately by the donees severally. R.S. 54:34-1. Fidelity Union Trust Co. v. Hall,125 N.J. Eq. 419 (at p. 430); Morristown Trust Co. v. Childs,128 N.J. Eq. 524. The apportionment of the burden of the federal tax is a matter which the states are free to regulate. Turner
v. Cole, 118 N.J. Eq. 497; Riggs v. Del Drago, 317 U.S. 95;63 S.Ct. 109. No statute on the subject has, however, been adopted in New Jersey. The federal statute requires the beneficiaries of life insurance policies and of the exercise of powers of appointment to contribute to the tax. Internal Rev. Code, § 826
(c) and (d). With these exceptions, neither of which touches the present case, the federal tax falls upon and diminishes the residuary estate, unless the will provides otherwise. Righter
v. Fidelity Union Trust Co., 110 N.J. Eq. 169; Turner v. Cole,supra.
"To ascertain the testator's intention with respect to taxes, as in other cases of testamentary interpretation, the whole will is studied and evidence is received of the situation existing at the time the will was made. In the present case, little that is helpful appears beyond this clause in the will: `I direct * * * that all inheritance taxes be paid out of my residuary estate.' In giving effect to such clauses, the rule has been developed that testator's express direction to pay out of residue a certain tax or part of tax impliedly requires *Page 380 
that a different tax or another part of the tax be not paid out of residue but be charged on the property in respect to which it is levied. Fidelity Union Trust Co. v. Suydam, 125 N.J. Eq. 458.
This rule has been applied where the executor was instructed to pay the state or federal tax, or both, that may be assessed against `my estate' or `the share herein given,' or `gifts herein made,' or `the bequests or beneficiaries in my will named;' and it has been held that such limited directions impliedly relieved the residuary estate of so much of the tax as was levied with respect to the title of testator's widow as tenant by the entirety or as surviving owner of a joint bank account; to property which was the subject of appointment under a power; to legacies given by codicil, or to inter vivos trusts.Gaede v. Carroll, 114 N.J. Eq. 524; Commercial Trust Co. v.Millard, 122 N.J. Eq. 290; Fidelity Union Trust Co. v. Suydam,supra; Rippel v. King, 126 N.J. Eq. 297; 128 N.J. Eq. 524;Morristown Trust Co. v. Childs, supra; Palmer v. Palmer,135 N.J. Eq. 516 (at p. 528); Commercial Trust Co. v. Thurber,136 N.J. Eq. 471; 137 N.J. Eq. 457; Phraner v. Stone, 137 N.J. Eq. 284.
On the other hand, in Hackensack Trust Co. v.Ackerman, 138 N.J. Eq. 244, a testamentary direction that `all inheritance, estate and other taxes shall be paid by my estate and not by the beneficiaries hereinafter named,' was found sufficiently broad to cover so much of the tax as resulted from three inter vivos trusts which had been set up by testatrix in her lifetime and the executors were therefore not entitled to reimbursement from the trustees."
Article Twenty-first of the testator's will provides:
"Twenty-first: I direct my executors and trustees to pay out of the residue of my estate any and all estate, succession, inheritance and other taxes which may be assessed thereon or against any gift, bequest or devise herein made, to the end that the legatee or devisee may receive the gift, legacy or devise without deduction for such tax or taxes; and should any such tax be not then due, I authorize my said executors and trustees, if they see fit so to do, to compromise with the proper officer of the State or Federal Government such future tax, and to pay the amount so fixed and determined."
The inter vivos trust was created by the testator and the reservations made therein as above stated, and upon his death *Page 381 
life estates in the income arose as before mentioned, and upon the death of the survivor of the persons above mentioned, one-half of the corpus was given to the University of Pennsylvania for the purposes stated, and the other half of thecorpus was given "for such purposes as the `settlor' may hereafter designate in writing, either by his last Will and Testament or letter duly signed by him and directed to or deposited with the `Trustee' prior to his death." It is to be observed that the testator also reserved to himself the right during his lifetime to withdraw any or all of the cash and any or all securities deposited in the trust, which in effect terminated the trust as to the withdrawn assets; the right to deposit additional assets under the trust; the right to direct the manner of investment or reinvestment of the corpus of the trust; the right to remove the trustee and appoint a successor trustee; and the right to modify, alter, or revoke the trust.
The agreement also provided that the powers of the trustee shall be deemed to be absolute only upon and after the death of the settlor and that during his lifetime no sale, assignment, conveyance, investment, reinvestment, or change in investment shall be made without the consent or approval in writing of the settlor.
It is intimated that the testator's control over the trust assets at the time of his death was to such an extent that those assets were, in effect, part of his testamentary estate; and it is the contention of counsel for the trustees of University of Pennsylvania that when the testator in Article Twenty-first of his will, referred to taxes assessed against his estate he must have intended to include taxes assessed with respect to all property under his control, including the inter vivos trust; and that all taxes assessed with respect to that trust should be paid from the residue of the estate.
The court feels in making that contention counsel stands on solid ground. I am inclined to the belief that under Article Twenty-first of the will, no part of the estate or inheritance taxes assessed with respect to the inter vivos trust is payable by the trustee or beneficiaries of that trust.
The fifth question raised by the complainant is whether *Page 382 
or not all of the debts, funeral expenses, legacies, and administration expenses are payable out of the residuary estate generally or whether they are primarily payable out of the two-fifths of the corpus of the residuary trust as to which the testator died intestate. The portion of the estate as to which there is an intestacy is a remainder after the life estate of Clemens J. Laise.
The intestate portion is a part of the corpus from which the income was payable to the testator's wife for life. After her death that share of income became payable to Clemens J. Laise for his life. The intestate share of the corpus then is distributable under the decree of this court to the wife as the testator's sole next of kin. See Langstroth v. Golding,41 N.J. Eq. 49; 2 Atl. Rep. 151; Swetland v. Swetland, supra.
Those cases seem to be dispositive of the question here raised.
I feel, however, that any property or interest in the estate which the testator did not dispose of by his will should be chargeable with his debts, taxes, and the expense of administering the estate in exoneration of the property or interests in the estate which are effectively disposed of by the will. Since it was the intention of the testator to give to his beneficiaries the benefits of his estate, I do not believe it was his intention to deprive his next of kin of the benefits incident to his gifts. I think the debts aforesaid should be charged against the intestate share of the residue.
I shall advise a decree to conform with the views herein above expressed. *Page 383