Norris v. Thomson's Executors.

NORRIS and others *vs.* THOMSON'S EXECUTORS and others.

1. The object of the statute of charitable uses in England was not to restrain gifts to such uses, but to enforce and make valid such gifts in certain cases in which they had before been held void, because the object was too vague and indefinite.

2. The statute of charitable uses has never been enacted in this state, and therefore English decisions founded upon its provisions, may not be of authority here, but such as declare gifts void on account of the objects being too vague and indefinite, upon principles adopted as part of the common law before the statute, should be regarded.

3. A power of appointment given to one by will, to give or devise certain property among such "benevolent, religious, or charitable institutions as she may think proper," is void, because so vague and indefinite that it cannot be enforced, and the defect in this case would not be aided in England by the statute of charitable uses.

4. When a power to dispose of property is conferred upon a person to whom a life estate or some other interest in it is given, this is a power in gross, and can be relinquished or surrendered; but when such power is given to one who has no interest in the property, it is a power simply collateral and cannot be surrendered.

5. An act of the legislature, which in a particular case authorizes the surrender of such power, when simply collateral, or confirms such surrender when made, is constitutional and valid; it diverts or takes away no vested or settled rights.

The main question involved in this suit, which is an amicable one, is as to the validity of a power of appointment to "benevolent, religious, or charitable institutions," given by the will of the testator to his widow. The cause was argued upon the bill and answers.

*Mr. Bradley* and *Mr. Robeson*, Attorney General, for the complainants.

*Mr. Rawle*, for the executors.

*Mr. Porter*, for Mrs. Thomson.

The Chancellor.

The complainants are Caroline Norris, Adeline Thomson, and Edward R. Thomson, the sisters and brother of the testator, John R. Thomson. They, with the defendant, Amelia Read, who is a sister of the testator, are his next of kin. The defendants are John M. Read and Charles Macalester, the surviving executors, Josephine A. Thomson, the widow of the testator, and John M. Read, and Amelia his wife. The defendants have all appeared and answered.

John R. Thomson, the testator, by his will, dated July 20th, 1862, after certain specific and other legacies, directed as follows:

" And I further direct, that from the income of the residue of my estate there shall be paid an annual sum of ten thousand dollars, payable semi-annually, to my wife, Josephine A. Thomson. And I authorize and empower my said wife, by her last will and testament, duly executed, to direct, limit, or appoint, give or devise, the portion of the estate so appropriated for an income of ten thousand dollars a year for her support, to give or devise the same to and amongst all and every the children of my sisters, Caroline Norris and Amelia Read, and their children, in such proportions, and for such estate or estates, as she may think proper ; or, if my wife so chooses, she may, by her last will and testament aforesaid, direct, limit, or appoint, give or devise the same, to and among my sisters, Caroline, Adeline, and Amelia, and their children and grand children, and my brother Edward, in such proportions, and for such estate or estates as she may think proper. And my said trustees, their heirs, executors, and administrators, are hereby required to pay, assign, convey, and transfer the same to the said appointees, according to the directions, limitations, appointments, gifts, and devises in the said last will of my said wife.

" And I further direct that, if the income from my estate, after the payment of the bequests herein before made, shall exceed the sum of ten thousand dollars a year, the surplus be invested in good securities, and that my said wife Josephine, shall be authorized and empowered by her last will and testament, to give and devise the same among such benevolent, religious, or charitable institutions as she may think proper.

" And in default of such directions, limitations, and appointments, and so far as the same shall not extend, then to pay, assign, convey, and transfer the residue to my said three sisters, Caroline, Adeline, and Amelia, and my brother Edward, their heirs, executors, and administrators, as tenants in common, to whom I give and devise the same."

The widow and other legatees being advised that the powers of appointment in said will, to benevolent, religious,

or charitable institutions, was void, or at least of doubtful validity, and being desirous to terminate a trust which would be long and troublesome, agreed among themselves as to the division of the property; and as they are the only parties beside the benevolent, religious, or charitable institutions, who have any interest in the property, they, on the 3d day of April, 1868, executed an agreement, under their hands and seals, to effect that object, which is set out in the pleadings. By this it is stipulated that after payment of debts, expenses of administration, and the specific and pecuniary legacies, the estate of the testator shall be divided between them in such manner that Mrs. Thomson shall have two-thirds, and the brother and sisters of the testator together, one-third of it; and Mrs. Thomson released, surrendered, relinquished, and yielded up her power of appointment, and covenanted and agreed not to exercise the same. And in that agreement, each party requested the executors to pay to the other party the share so agreed upon, and agreed to execute to them all proper releases and discharges.

By an act of the legislature, approved April 10th, 1868, reciting this agreement of settlement, it was confirmed and established, and the powers of appointment in the will were declared to be ended and determined, and the executors were authorized to carry out and effect the settlement.

The executors, not being satisfied that they were authorized to yield up the trust property on the strength of this settlement, even when confirmed by the legislature, declined to pay over the trust funds. This suit is brought to compel such payment by them.

The executors contend that the powers of appointment are valid, and cannot be surrendered or released by Mrs. Thomson; and that it is beyond the power of the legislature to give validity to an agreement which disposes of the property, contrary to the provisions of the will, and the rules of law which give effect to those provisions.

The complainants contend that the power of appointment to benevolent, religious, or charitable institutions, is void,

and that the other appointees have power to surrender also, that the power to appoint is a power in gross, and that Mrs. Thomson, at whose option it must be exercised, can now determine that option and release or surrender it. And even if this could not be done by the law as it stood, that the act of the legislature gives it validity.

*First*, as to the validity of the power. This depends upon the doctrine of charitable uses, and its application to this case. The Court of Chancery has, for many years, compelled the performance of gifts and bequests to charitable and other like uses. It is a matter that falls properly and naturally within the jurisdiction of that court. In England, few cases are to be found in chancery, before the statute on that subject, known as the statute of charitable uses. 43 *Eliz., Cap.* 4. That statute gave the court directly, no jurisdiction over charitable uses. But in its preamble, which may be found with the statute in full, in 2 *Coke Inst.* 797, or condensed in 2 *Roper on Leg.* 1115, and 2 *Story's Eq. Jur.*, § 1160, it recites that many gifts for the twenty-one objects enumerated in it, have not been employed according to the charitable intent of the givers and founders thereof. And it provides that four commissioners, one of whom shall be the bishop of the diocese, shall be appointed by the chancellor, authorizing them to inquire, by the oaths of twelve men, of the abuses and misappropriation of property "given, limited, appointed, or assigned, to or for any of the charitable and godly uses therein rehearsed." It directs the commissioners to make order for the application of such property to the uses and intents for which it was given. It directs them to report their orders into the Court of Chancery, which is charged with the execution of them; parties aggrieved having the right of appeal to the chancellor.

On the equity of this statute and the rights established by it, that court took jurisdiction of all charities or subjects included within it. Many of them, as the maintaining of bridges, causeways, and houses of correction, were neither charitable nor religious objects, in the usual sense of these

terms. Yet, in proceedings by bill and information instituted in that court, and not in any way under the provisions of the act, the Court of Chancery has always defined charitable and religious objects according to the enumeration in the preamble of that act; not limiting the objects by the terms of the act literally, but limiting them to matters of like nature.

That statute is not in force in this state, and therefore cannot limit the authority of this court to enforce charitable gifts, not included within it. It was not used for that purpose by the English equity courts; but it was used by them to enlarge their power. The rule of law and in equity before that statute, was, that a gift or devise for a purpose or object so vague and indefinite that the Court of Chancery could not enforce it, was void. After the statute of charitable uses, the court held that all gifts for any object enumerated in it, were for purposes sufficiently definite, and therefore would be enforced in chancery. In cases where the object of the gift would not have been held sufficiently definite without the statute, and have since been held sufficient by force of the statute, the authority of the decision might perhaps be questioned, on the ground that the statute is not in force here. But where, on the other hand, the English courts have held the object too indefinite, and the use therefore void notwithstanding the statute, their decisions are entitled to the same respect here as in all other cases in which we take them for our guide. The object of the statue of Elizabeth was not to make void or restrain, but to give effect to gifts for charitable and pious uses.

Then the question in this case is, whether the power of appointment given in this will " to give or devise the same among such benevolent, religious, or charitable institutions as she may think proper," is so vague and indefinite as to be void. As the power is to give to any of the three, if one of them is too vague, the power clearly is void. She has the right to elect not to give to the other two. It is conceded that by the English decisions, the words " charitable and re-

ligious " are sufficiently definite, and it is contended that, by the same authorities, the word *benevolent* is not; and that a gift to *benevolent* objects or *benevolent* institutions, is void.

The word *benevolent* is certainly more indefinite, and of far wider range than *charitable* or *religious;* it would include all gifts prompted by good will or kind feeling towards the recipient, whether an object of charity or not. The natural and usual meaning of the word would so extend it. It has no legal meaning, separate from its usual meaning. The word " charitable " has acquired a settled limited meaning in law, which confines it within known limits.

In all the decisions on this subject, it has been held that a devise or bequest in England for *benevolent* objects, or in trust to give to such objects, is too indefinite, and therefore void, and not being within the scope of the statute of Elizabeth, is not saved by it   And the reasoning of the judges by whom it has been so decided, is too clear, and their authority too great, to admit of any doubt upon the question at this day.

In *Morice* v. *The Bishop of Durham,* the bequest was to the bishop in trust, to dispose of to such objects of *benevolence* and liberality as he, in his discretion, shall most approve of.  Sir William Grant, 9 *Ves.* 399, and Lord Eldon, on appeal, 10 *Ves.* 522, held the trust specified to be void, and decreed the bishop to hold in trust for the next of kin. In *James* v. *Allen,* 3 *Merivale* 17, a gift to executors in trust for benevolent purposes, was held void.  Many other cases sustain the principle on which these decisions rest.  *Ellis* v. *Selby,* 7 *Sim.* 352 ; *S. C.,* on *appeal before Lord Cottenham,* 1 *Myl. & Cr.* 286 ; *Williams* v. *Kershaw,* 1 *Keen* 227, *note ; Kendall* v. *Grange,* 5 *Beav.* 300 ; *Vezey* v. *Jamson,* 1 *Sim. & Stu.* 69 ; *Brown* v. *Yeall,* 7 *Ves.* 50, *note ; Ommaney* v. *Butcher, Turn. & Russ.* 260.

The same doctrine has been established in the courts of New York, where such gifts are held void, unless the object of the gift is specific.  While they hold that there need not be any legally existing institution to receive the gift, they main-

tain that the object or purpose of the gift must be specified. *Potter* v. *Chapin*, 6 *Paige* 650; *Williams* v. *Williams*, 4 *Seld.* 547; *Owens* v. *Miss. Soc.*, 4 *Kern.* 397; *Beekman* v. *Bonsor*, 23 *N. Y. R.* 298.

And this is stated as the law in such case, in 2 *Story's Eq. Jur.*, § 1164 *and note*; 2 *Redfield on Wills* 830, § 80; 2 *Roper on Leg.*, ch. 19, § 1 *and* 6.

. The only disposition invalid on this account, is so much of the power as authorizes the appointment to benevolent, religious, or charitable institutions. The power to dispose of to the persons designated, is valid.

. The *second* point is, whether the release of the power by Mrs. Thomson is a valid extinguishment of it, so far as the power extends to the brother and sisters of the testator. As they join in the instrument, there can be no question of its validity; had it no other effect, they and all persons claiming through and under them, would be estopped. The children of Mrs. Norris and Mrs. Read have not joined, nor does it appear in the case whether they have any children or grandchildren. But the power to devise to them, only extends to the fund which produces the interest given to Mrs. Thomson, and in which she has thus a life estate. This, therefore, is a power in gross, which she herself can release and extinguish, without their consent. It is a settled rule, that where a life interest or other estate is given to the person who is authorized to devise or appoint the property, the person authorized to appoint can release and extinguish the power. This is called a power in gross. But where the power to appoint is given to one who has no estate or interest in the property to be distributed, which is called a power simply collateral, the person entrusted with the power cannot release or extinguish it, but may exercise it, notwithstanding any covenant or agreement to the contrary. 4 *Kent* 346; 1 *Sug. on Powers*, 80, 90, 93, 100; *Smith* v. *Death*, 5 *Madd.* 371; *Albany's Case*, 1 *Rep.* 111; *West* v. *Berney*, 1 *Russ. & Mylne* 431; *Bickley* v. *Guest, Ibid.* 440; *Horner* v. *Swann*, 1 *Turn. & Russ.* 430; *Hillyard* v. *Miller*, 10 *Barr* 326; *Miles* v. *Knight*, 12 *Jurist* 666.

Such being the rule of law, by the release contained in the article of settlement, the power is extinguished as to the whole, except the power to appoint to the benevolent, religious, or charitable institutions. This power regards property in which Mrs. Thomson has no interest—that is, the surplus income of the estate, or the income of the part which does not yield her annuity. As regards that part, it is a power simply collateral. But the power as to this is void, by the conclusion before arrived at. The property, therefore, will be held in trust for the next of kin, who have joined in the article of settlement.

*Lastly*, the act of the legislature is, in my opinion, sufficient to render the settlement valid, and to give it efficacy to extinguish the powers, had the power to appoint to charitable uses been a valid power, and had it been, by the rules of law, incapable of being extinguished by a release of Mrs. Thomson, because a power simply collateral. The rule of law that forbids the release of a power simply collateral, is, like every law, in the control of the legislature. They can alter any law, however wise and just, and change it to one that is inexpedient and unjust. Much more can they alter a mere arbitrary and technical rule like this, for there is no reason why a power to appoint can be relinquished by a trustee having a life interest in the property, and cannot by a trustee who has no interest.

No one would question the validity of a statute declaring that both powers, simply collateral and in gross, may be released and extinguished by the person to whom they were given. Such law would operate on powers in existence, and created before its passage. The legislature can, at its pleasure, change the law of descents and of wills, and of operation of entailments, so as to affect and change all estates not already vested under them. They can enact, and have enacted, that surviving executors and administrators with the will annexed, shall exercise power to sell lands given by the will jointly to all the executors named, and such law affects the powers created by wills prior to its enactment.

They have the power to make this change universal, or local, or private, only applying to a particular will or instrument. A statute declaring that John Den may break an entail by feoffment with warranty, would be valid. The only limitations on legislative power in this respect are those prescribed in the constitution, and the restriction universally acknowledged, that no law shall be passed taking away vested rights of property. Taking property for public use, is a proper exercise of the law-making or legislative power, and compensation in such cases is provided by the constitution. If the power to appoint to the testator's brother and sisters had been limited to them, instead of being as it is, in the alternative, they would each have a vested right to some proportion which the legislature could not take away without their consent. But before any estate or property is vested, the legislature have the power to change the rules of law by which, as they are, it would eventually vest in one class of persons now in existence, so that it will vest in another class, or in different proportions. The statutes altering the law of descents and the law of entailments, and regarding the rights of married women, are of this class.

Such effect has been given to private statutes by the Supreme Court of this state, in *Richman* v. *Lippincott*, 5 *Dutcher* 44, and by the Supreme Court of the United States in *Croxall* v. *Sherrerd*, 5 *Wall.* 268, and in *Kearney* v. *Taylor*, 15 *How.* 494.