Trustees v. Wilkinson.

The Trustees of the Union Methodist Episcopal
Church of South Camden et al.

*v.*

Frederick R. Wilkinson, executor, et al.

On a bill filed by certain of the beneficiaries of a will, whose legacies were
charged on land, for its construction, and for an accounting, after it had been
admitted to probate by the orphans court, all the legatees whose legacies were
charged on the land being made parties—*Held,*

(1) That neither the legality of the execution of the will, nor the capacity
of the testatrix, nor the existence of undue influence, could be tried in this
court, although issue may have been joined thereon.

(2) That all of the legatees whose legacies were charged on the lands de-
vised ought to be parties, and hence there was no misjoinder; nor if there
were misjoinder could the objection be raised for the first time at the hearing.

(3) That a legacy to two churches, of $5,000 to each church, charged on
testatrix's lands, "the interest to be strictly applied and distributed to the
poor members of said churches forever, and nothing else," is a valid, charita-
ble gift.

(4) That the language of the gift, "five thousand dollars each, to be secured
as by bond and mortgage upon the brick block of the five three-story houses
at the southeast corner of Fifth and Clinton streets (two thousand dollars on
each house), in the city of Camden" &c., after the death of the testatrix's
husband, was sufficient to charge it on the lands described.

Bill for relief.   On final hearing on pleadings and proofs.

*Mr. James E. Hays,* for complainant.

*Mr. M. B. Taylor* and *Mr. J. J. Crandall,* for defendants.

The Chancellor.

The bill is filed by two incorporated Methodist Episcopal
churches in Camden, to obtain a construction of a codicil to the
will of Mrs. Mary Ann Folwell, which, it is claimed, imposes
a charge on land in that city in favor of each of them, for the
benefit of their respective poor members; and also for an ac-

count of rents and profits of the property, in order that the complainants may be paid the interest due them under the charge. It prays for relief generally, also. The answer sets forth many different defences. Those which it is necessary to notice are the following: that the codicil was not duly executed; that the testatrix, when it was signed, was not possessed of testamentary capacity; that it was obtained by fraud upon her; and that the gift in question is invalid, and no lawful charge on the property. It was also urged on the hearing that there is a misjoinder of complainants. The gift is as follows:

"I give and bequeath to the Broadway and Fifth street M. E. Churches, in the city of Camden, state of New Jersey, five thousand dollars each, to be secured as by bond and mortgage upon the brick block of the five three-story houses, at the southeast corner of Fifth and Clinton streets (two thousand dollars on each house), in the city of Camden, with legal interest on and after the death (and not before) of my dearly-beloved husband, Robert Folwell; said interest to be strictly applied and distributed to the poor members of said churches forever, and nothing else. Interest to be collected on the first of November of each and every year after the death of my husband aforesaid."

The codicil was made in July, 1873, and it was admitted to probate by the surrogate of Camden county in August of that year. The questions raised by the answer as to the legality of the execution of the will, the capacity of the testatrix, and the existence of undue influence, cannot be tried in this suit. *Story's Eq. Jur.* §§ *184, 238, 1445; Allen* v. *McPherson, 1 H. of L. 191; Gould* v. *Gould, 3 Story 516, 537; Quidort's Adm.* v. *Pergeaux, 3 C. E. Gr. 472, 477; Ryno's Ex.* v. *Ryno's Adm., 12 C. E. Gr. 522; Broderick's Will, 21 Wall. 503; Gaines* v. *Chew, 2 How. 619; Jones* v. *Frost, Jacob 466; Jones* v. *Gregory, 2 De G. J. & S. 83.* It is true that in *Lynch* v. *Clements, 9 C. E. Gr. 431,* the defence of undue influence in obtaining a will which had been admitted to probate, was entertained and prevailed in a suit brought by the residuary legatee to recover property which passed to him by it. But the question of jurisdiction does not appear to have been raised. And, moreover, in that case the wrong-doer, the person who obtained the will by

fraud, sought the assistance of this court to effect his evil design, and it was properly denied. *Nelson* v. *Oldfield, 2 Vern. 76.* Where a question is raised here by way of defence in regard to the validity of a will, this court will, in a proper case, refrain from granting relief based on the validity of the instrument until proper opportunity has been had to test the question in the appropriate tribunal. *Story's Eq. Jur.* § *1446.* The answer on this head presents nothing but mere bare denials of the validity of the codicil, based on allegations of matters, all of which are cognizable in the probate courts, and on that subject the defence is in fact a mere appeal from the surrogate to this court.

It is urged, on behalf of the answering defendant, that, seeing that issue has been joined in this suit on the question of the validity of the codicil, it is, therefore, the duty of this court to litigate it here; but if this court has not jurisdiction, it is its duty to make the objection, and consent cannot give jurisdiction. *Heyer* v. *Burger, Hoffm. Ch. 1; Ryno* v. *Ryno, 12 C. E. Gr. 522.*

The property disposed of by the codicil was the separate estate of the testatrix. By her will she gave all her property to her husband, and he appears by the evidence to have been more active than any one else in obtaining the codicil. Indeed, he got it drawn for her, and if there was any influence he alone seems to have exerted it. The contestant is his son, her stepson, to whom, by his will, he gave a life-estate in the property. The codicil was executed in the presence of three witnesses, Mr. Fulmer, who drew it, Isaiah Woolston and Mrs. Lock, the testatrix's nurse. Mrs. Lock is dead. Mr. Woolston and Mrs. Lock made the proofs of the execution before the surrogate. They both testified then that they were present at the same time and saw the testatrix sign her name to the instrument, and heard her publish, pronounce and declare it to be a codicil to her last will and testament, and that at the doing thereof she was of sound and disposing mind and memory, so far as they knew, and as they verily believed, and that Mr. Fulmer was present at the same time and witnessed the execution thereof, and that they and

he each signed their respective names as witnesses to it at the same time, at the request and in the presence of the testatrix, and in the presence of each other. It is true Mr. Woolston, in his testimony in this suit, says that after the codicil had been executed the testatrix's husband asked him to get her to acknowledge both the will and the codicil, and that he asked her accordingly if she "acknowledged that to be her hand and seal," and that she said she acknowledged nothing. But not only does Mr. Fulmer swear that nothing of the kind was said, but Mr. Woolston, on the 19th of August, 1873, twenty-one days after the codicil was made, testified, as before mentioned, before the surrogate that he heard her publish, pronounce and declare the instrument in question to be a codicil to her last will and testament &c. And, it may be remarked, he appears to have been careful then as to his testimony, for he was, from conscientious scruples, unwilling to take an oath and was duly solemnly affirmed. Moreover, the surrogate swears that after preparing the proof for the codicil he carefully read over to Mr. Woolston, word for word, the affirmation which the latter made, and that he made no objection to it. Besides, both Mrs. Middleton and Mr. Gardom testify that the testatrix said to the latter, who showed her the codicil the morning of the day before her death, and nine days after it was executed, that it was all right. By it she gave Mr. Gardom, who was an old friend of hers, a legacy of $1,000. That Mr. Woolston's memory on the subject is not to be relied on, is evidenced by the fact that he does not remember that Mrs. Lock was present when the codicil was signed. It appears also, by his answer to the question whether the testatrix at any time, in his presence, acknowledged the codicil, or declared the paper to be a codicil to her last will; to which he replies, "In no other way but by signing it, as I recollect; it is a long time ago." He says he does not recollect that the codicil was read over to the testatrix in his hearing, but adds that it might have been. Mr. Fulmer swears that it was read over to her by her husband in the presence of all who were in the room, all being quiet, and she and all the rest paying attention. To the question whether the testatrix, in fact, requested him and Mr. Fulmer to sign

their names as witnesses to the codicil, while Mr. Woolston says he thinks not, he also says that she might have done it, that he does not recollect; it was some years ago. His testimony in this suit was given in April, 1880, over six years from the time when the codicil was made. The testatrix's husband, sole legatee and devisee under her will, proved the will and codicil soon after her death, and then affirmed that they were her true last will and codicil thereto, so far as he knew, and as he verily believed, and the probate has stood unchallenged, except in this suit, for now over nine years.

There is no misjoinder of complainants. Where a bill is filed to obtain the benefit of a charge of legacies on an estate, all legatees whose legacies are so charged should be made parties. *Story's Eq. Pl. § 164.* And further, the objection, if it were good if taken by demurrer, plea or answer, is too late when made, as it is in this case, for the first time on the final hearing, unless the court, finding itself embarrassed by the misjoinder in administering relief, should see fit to entertain it. *Annin* v. *Annin, 9 C. E. Gr. 184.*

It is admitted that the complainants are religious corporations under the laws of this state, and that it is they who are referred to in the codicil as " the Broadway and Fifth street M. E. Churches, in the city of Camden, state of New Jersey." The gift is a valid charity. It is of the sum of $5,000 with legal interest after a certain time (the death of the testatrix's husband), to each of the two complainants; " the interest to be strictly applied and distributed to the poor members of said churches forever, and nothing else." It is urged, however, that the gift, being confined to the poor of the churches, is not of so extensive a character, either in number of objects to be benefited or territorial limits, as is required (it is insisted) for a valid charity. This argument is based on an erroneous idea of the requisites of such a charity. In *Magill* v. *Brown, Bright. 347*, a gift for the poor members of the Friends Society was sustained. In *Straus* v. *Goldsmid, 8 Sim. 614*, one for ten worthy men to purchase meat and wine for the service of two nights of the passover, was held good; and in *Witman* v. *Lex, 17 S. & R. 88*, a gift of

money " to be laid out in bread annually, for ten years, for the poor of the Lutheran congregation of which the donor was a member," was adjudged to be a valid charity. So, also, of a gift to twenty aged widows and spinsters of a parish. *Thompson* v. *Corby, 27 Beav. 649;* and a gift to poor relations. *Brunsden* v. *Woolredge, Ambler 507.* So, too, of a gift to a masonic lodge; the court saying that a leading object of the society was supporting the poor members, their widows and orphans, and adding that the object was essentially perpetual. *King* v. *Parker, 9 Cush. 71.* It need not be said that one of the objects of a Christian church is to relieve the physical wants of the poor, and that the poor of the particular society are special objects of such charity to its members.

To consider the remaining objection, which is that the language of the gift is not such as to create a charge. The gift is to the two churches, of $5,000 to each, to be secured as by bond and mortgage on the five houses, $2,000 on each house, with interest after Mr. Folwell's death. The codicil was not drawn by a lawyer. The language used, however, is such as to convey very clearly the idea of a charge of $2,000 on each house and lot. The design is so manifest that further remark on the subject is unnecessary. The complainants are entitled to the account they seek. *Wallington* v. *Taylor, Sax. 314.*