11 N.J. Super. 165 (1951)
78 A.2d 98
MARIA MIRINDA, EXECUTRIX UNDER THE LAST WILL AND TESTAMENT OF ELINORE F. SPINNER, DECEASED, PLAINTIFF-RESPONDENT,
v.
FLORENCE BLAKE KING, DEFENDANT-APPELLANT, AND THE ATTORNEY GENERAL, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 18, 1950.
Decided January 3, 1951.
*168 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Robert B. Meyner argued the cause for the defendant-appellant.
Mr. Sylvester C. Smith, Jr., argued the cause for the plaintiff-respondent.
Mr. John W. Griggs, Deputy Attorney General, argued the cause for the State.
The opinion of the court was delivered by JAYNE, J.A.D.
The plaintiff, experiencing some significant incertitude concerning the proper performance of her fiduciary duty as executrix of the last will and testament of one Elinore F. Spinner, deceased, prosecuted this action in the Chancery Division of this court to obtain a judicial construction of certain provisions of the will together with conformable instructions.
*169 The testamentary paragraphs of present pertinency read as follows:
"Fifth: I hereby give, devise and bequeath my real estate located at the Corner of Chambers and Bullman Streets, Phillipsburg, New Jersey, to Maria Mirinda for and during her natural life and after her death I direct the same shall become absolutely the property of Delaware Chapter No. 50, Order of the Eastern Star of the Town of Phillipsburg, State of New Jersey, as a place for the aged and blind, such home to be maintained by the said Eastern Star as a memorial to Henry Tillman Spinner and Jane Frome Spinner. This devise is to be free and clear of any encumbrance or lien of any kind which may be against the property at the time of my death and also to be free of any inheritance tax. I direct my executrix hereinafter named to pay out of my estate such amount as will entirely free the said property from any such encumbrance, lien or tax.

* * * * * * *
"Fifteenth: All the rest, residue and remainder of my estate I give, devise and bequeath to Delaware Chapter No. 50, Order of the Eastern Star of the Town of Phillipsburg, State of New Jersey, to hold this fund intact so that the principal of the same, together with accumulated income, shall be available and used for the maintenance of the Henry Tillman Spinner and Jane Frome Spinner memorial, after the death of Maria Mirinda."
The questions submitted to the court for determination are succinctly stated in the pretrial order. They are:
"(a) Whether the charitable trust set up under paragraphs Fifth and Fifteenth of the will of Elinore F. Spinner, deceased, fails and whether some other institution under the cy pres doctrine would be entitled to take over the property of the trust, or whether Florence Blake King, the only heir at law and next of kin entitled to the personalty under the laws of distribution or entitled to property under the statute of descent, if the will fails, shall take.
"(b) Whether Florence Blake King, before her marriage known as Florence Blake, is entitled to an accounting as against plaintiff, Maria Mirinda, executrix under the last will and testament of Elinore F. Spinner, deceased."
It was resolved by the judge of the Chancery Division that the devise of the real estate to Delaware Chapter No. 50, Order of the Eastern Star, as a place for the aged and blind, and the residuary bequest for its maintenance created a valid subsisting charitable trust.
*170 It had been stipulated that the Delaware Chapter No. 50, Order of Eastern Star, had declined to accept the trust and that the Warren Hospital had upon request refused to qualify as a substituted trustee. In consequence, the Chancery Division judge furthermore determined that "a trustee will be appointed to administer the trust with direction to dispose of the property. The distribution of the proceeds of the sale of said property and the fund constituting the residue of the estate will await submission to the Court of the names of qualified institutions whose object is the care of the aged and the blind."
It has been said, "Charity is never lost; it may meet with ingratitude, or be of no service to those upon whom it was bestowed, yet it ever does a work of beauty and grace upon the heart of the giver."
Obviously the present appeal is primarily critical of the determination that the testatrix intended to create a charitable trust, that in the circumstances the trust did not fail and that it is a valid subsisting charitable trust. The application of the cy pres doctrine and the contemplated exercise of the power which it confers are at present of secondary consideration.
The story of charitable trusts in the law, decisional and legislative, is lengthy and interesting. 3 Scott on Trusts, c. 11, § 348 et seq.; 2 Bogert, Trusts and Trustees, c. 17, § 321 et seq.; Lewin on Trusts (14th ed.), c. IX, p. 470; State ex rel. Linde v. Packard, 35 N.D. 298, 160 N.W. 150, L.R.A. 1917 B, 710. Research has eventually supplied reason to believe that charitable uses were recognized by the English law before the Norman Conquest, and that the Court of Chancery had sustained such trusts long before the enactment of the Statute of Charitable Uses by Parliament in 1601. 43 Eliz., c. 4. Vide, Vidal v. Girard's Executors, 2 Howard 127, 11 L.Ed. 205 (U.S. 1844). The preamble, however, of that enactment, enumerating some 21 charitable objects, has undoubtedly been influential both in England and in the United States in determining whether a stated purpose is to be regarded in law as charitable.
*171 Chancellor Zabriskie in Norris v. Thomsons Executors, 19 N.J. Eq. 307 (Ch. 1868), commented (at p. 311): "On the equity of this statute and the rights established by it, that court took jurisdiction of all charities or subjects included within it. Many of them, as the maintaining of bridges, causeways, and houses of correction, were neither charitable nor religious objects, in the usual sense of these terms. Yet, in proceedings by bill and information instituted in that court, and not in any way under the provisions of the act, the Court of Chancery has always defined charitable and religious objects according to the enumeration in the preamble of that act; not limiting the objects by the terms of the act literally, but limiting them to matter of like nature."
On appeal, the Court of Errors and Appeals, 20 N.J. Eq. 489 (1869), concluded that the common law, as interpreted in the decisions relating to the statute of 43 Elizabeth, c. 4, prevailed in this State with respect to the question of what constitutes the legal definition of a charitable trust. That statute, long obsolete, was repealed by the Mortmain and Charitable Uses Act of 1888, which nevertheless embodied the same list of objects deemed to be charitable, among which is the "relief of impotent, aged and poor people."
And so it suffices initially in the present case to realize that the bestowal of aid upon the aged and the blind has been classified for at least 350 years as a charitable purpose. Indeed, the relief of the poor, the aged, and the disabled has been and is a prolific field of charity.
Perhaps it should incidentally be acknowledged that in view of the flow of subsequent decisions, the list of charitable objects contained in the ancient statute is not now to be regarded as exhaustive. The class embracing trusts for purposes beneficial to the community, to society, or lessening the burdens of government has especially increased with the progressive developments of our civilization. Vide, MacKenzie v. Trustees of Presbytery of Jersey City, 67 N.J. Eq. 652 (E. & A. 1905), for a modern definition of charity in its legal sense, and Noice v. Schnell, 101 N.J. Eq. 252 (E. & A. *172 1927), anent a gift for the development of the Palisades along the Hudson River.
The following procession of citations supplies references to cases which expose to view the expansive range within which charitable bequests have been sustained. Goodell v. Union Asso., &c., of Burlington County, 29 N.J. Eq. 32 (Ch. 1878); Trustees v. Wilkinson, 36 N.J. Eq. 141 (Ch. 1882); affirmed, 38 N.J. Eq. 514 (E. & A. 1884); George v. Braddock, 45 N.J. Eq. 757 (E. & A. 1889); Jones v. Watford, 62 N.J. Eq. 339 (Ch. 1901); modified, 64 N.J. Eq. 785 (E. & A. 1902); Hilliard v. Parker, 76 N.J. Eq. 447 (Ch. 1909); White v. City of Newark, 89 N.J. Eq. 5 (Ch. 1918); N.J. Title Guar. and Trust Co. v. Smith, 90 N.J. Eq. 386 (Ch. 1919); King v. Rockwell, 93 N.J. Eq. 46 (Ch. 1921); Bloomer v. Bloomer, 98 N.J. Eq. 576 (Ch. 1925); affirmed, 100 N.J. Eq. 361 (E. & A. 1926); Sheen v. Sheen, 126 N.J. Eq. 132 (Ch. 1939); Guaranty Trust Co. v. N.Y. Community Trust, 141 N.J. Eq. 238 (Ch. 1948); affirmed, 142 N.J. Eq. 726 (E. & A. 1948); Wendel v. Hazel Wood Cemetery, 3 N.J. Super. 457 (Ch. Div. 1949); affirmed, 7 N.J. Super. 117 (App. Div. 1950); Annotation, 115 A.L.R. 1132.
Charities are not now restricted to those permitted by the law of England in the Elizabethan era. Bianchi v. South Park Presbyterian Church, 123 N.J.L. 325 (E. & A. 1939). In defining charities the courts should be at liberty to judge in recognition of the standards of the time. Porter v. Baynard, 158 Fla. 294, 28 So.2d 890, 170 A.L.R. 747. New explorations in science, new fields and opportunities for the promotion of human advantage, different economic and social needs of communities, states, and nations constantly enlarge the scope of charity. 10 Am. Jur. 622, "Charities," § 52.
Indeed, Justice Swayne in Ould v. Washington Hospital, 95 U.S. 303, 24 L.Ed. 450 (1877), remarked: "A charitable use where neither law or public policy forbids may be applied to almost anything that tends to promote the well-doing and well-being of social man."
The earliest case of a charitable gift appearing in our New Jersey Equity Reports seems to be Baldwin Ex'rs v. Baldwin, *173 7 N.J. Eq. 211 (Ch. 1848), in which the Chancellor upheld a devise in trust of three lots as the site of a building for a free school for the benefit of all poor children living between Ferry Street and the river in Newark. In N.Y. Annual Conference M.M.A.S. v. Ex'rs Clarkson, 8 N.J. Eq. 541 (Ch. 1851), there was a testamentary bequest "for the support of old worn out preachers."
We therefore do not meet with any hesitation in declaring in the abstract that a donation for the relief of the aged and the blind normally evinces a charitable intent and purpose within the import of the law. 2 Perry, Trusts (5th ed.) 314.
The real pressure of the argument on behalf of the appellant is applied in support of the contention that the gift is ineffectual and the trust inoperative in that (a) the will does not exhibit any genuine intent or purpose of the testatrix to accomplish an object of charity, and (b) the trust has failed by reason of the impracticability of its fulfillment.
In approaching the consideration of those features of the case we must give a nod of recognition to the fixed policy of the law to uphold charitable bequests and trusts as valid whenever possible (Hesketh v. Murphy, 36 N.J. Eq. 304 (E. & A. 1882); Noice v. Schnell, supra; First Camden, &c., Trust Co. v. Collins, 110 N.J. Eq. 623, 632 (Ch. 1932); reversed on another point, 114 N.J. Eq. 59 (E. & A. 1933); Cinnaminson, &c., Ass'n. v. Fidelity-Phila., &c., Co., 141 N.J. Eq. 127 (Ch. 1948); Y.W.C.A. v. Murrelle, 141 N.J. Eq. 229 (Ch. 1948); Morristown Trust Co. v. Protestant Episcopal Church, 1 N.J. Super. 418 (Ch. Div. 1948); 10 Am. Jur., Charities, p. 593), and to the established presumption against partial intestacy. Danker v. Cooper, 114 N.J. Eq. 283 (Ch. 1933); Bankers Trust Co. of N.Y. v. Greims, 115 N.J. Eq. 102, 114 (Ch. 1934); affirmed, 117 N.J. Eq. 397 (E. & A. 1935); Guaranty Trust Co. v. Catholic, &c., N.Y., 141 N.J. Eq. 170 (Ch. 1948).
It is proposed that the testatrix was manifestly motivated in her creation of the trust by a sentimentality of family pride and that her predominant purpose was to provide a memorial to Henry and Jane Spinner. Assuredly, altruism *174 is a characteristic of charity, but in the conception of the law it is the purpose to which the subject matter of the gift is to be devoted and not the motives of the testator that determines whether the trust is charitable. Woodstown National Bank v. Snelbaker, 136 N.J. Eq. 62 (Ch. 1944); affirmed, 137 N.J. Eq. 256 (E. & A. 1945); In re Butler, 137 N.J. Eq. 48 (Prerog. 1945); affirmed, 137 N.J. Eq. 457 (E. & A. 1946); Wilber v. Asbury Park Nat'l. Bank, &c., Co., 142 N.J. Eq. 99 (Ch. 1948); affirmed, 2 N.J. 167 (1949).
An interesting illustration is found in Detwiller v. Hartman, 37 N.J. Eq. 347 (Ch. 1883), in which the testator had provided for a gift in perpetuity to establish and maintain a brass band bearing his name to march to the cemetery and there play a funeral march and other selections on the anniversaries of his death. Although it was not supposed that the decedent would selfishly or otherwise enjoy the music, it was nevertheless resolved that the purpose to which the gift was intended to be devoted was not in the legal sense charitable. See, also, Morristown Trust Co. v. Morristown, 82 N.J. Eq. 521 (Ch. 1913).
A truly charitable trust, however, does not collapse because the donor created it as a memorial to himself. Martin v. Haycock, 140 N.J. Eq. 450 (Ch. 1947); 10 Am. Jur. 594, Charities, § 13.
An examination of the adjudications has induced Professor Bogert to say: "The question is not what the testator desired to accomplish by the trust, but what in the opinion of the court will be the result of the trust upon the community and society in general. The settlor may have founded the trust solely to satisfy his family pride, for self-glorification, in order to emulate and rival a neighbor's bounty, to improve living conditions in his home city and thus strengthen his own business interests, or for other reasons unconnected with social advancement in the region in question. The court should not be interested in these incidental psychic or even material advantages to the settlor or his family. The court should, and generally does, direct its attention merely to the question whether the net result of the trust in operation will be to *175 advance the religious, educational, eleemosynary, governmental, or other charitable interests of the community and thus to produce the social advantage required for the charitable trust." 2 Bogert on Trusts 1110, § 364.
In the Restatement of the Law of Trusts, § 368, appears the comment, "(d) If the purposes to which the property is by the terms of the trust to be devoted, are charitable purposes, the motive of the settlor in creating the trust is immaterial."
In undertaking to determine the character of the trust from an ascertainment of the reasonably probable intent and purpose of the testatrix, we cannot confine our reflections solely to the language of paragraphs "Fifth" and "Fifteenth" of the will, or to any other isolated testamentary expressions. In this, as in other analogous cases of construction and interpretation, we must survey the entire will and if, taken as a whole, the will exhibits intrinsically a general charitable intent and purpose, such a characteristic indicative of the propensities of the testatrix ought to be accorded some measure of significance. Wilber v. Asbury Park Nat'l. Bank, &c., Co., supra; First Camden, &c., Trust Co. v. Collins, supra; Fidelity Union Trust Co. v. Laise, 127 N.J. Eq. 287 (Ch. 1940).
In the will before us we observe in paragraphs "Ninth" to "Twelfth" inclusive bequests of $1,000 each to the First M.E. Church of Easton, Pennsylvania, St. Luke's Episcopal Church of Phillipsburg, New Jersey, College Hill Presbyterian Church, and to the Children's Home of Easton. We consequently perceive in the will, as did the trial judge, a rational basis for the inference that the testatrix in her contemplation of death not only had concern for the natural objects of her bounty, but beyond that a manifest desire to bestow charity.
But counsel for the appellant asserts that it is unreasonable to believe that the testatrix ever seriously envisioned the probability that a dwelling house of but five rooms could be usefully maintained as a home for the aged and blind. The answer is that although the designated means of administering the charity are imprudently, impracticably, or even foolishly selected, the bequest itself is not necessarily void as *176 a charitable use. George v. Braddock, supra; Christian v. Catholic Church, &c., 91 N.J. Eq. 374 (Ch. 1920); Wilber v. Owens, 2 N.J. 167, 176 (1949); 3 Scott on Trusts 2011, § 374.7. Nor does the monetary inadequacy of the bequest for the intended purpose inevitably destroy its validity as a charitable fund. Parker v. Fidelity Union Trust Co., 2 N.J. Super. 362 (Ch. 1944); Patton v. Pierce, 114 N.J. Eq. 548 (Ch. 1933); Shannon v. Eno, 120 Conn. 77, 179 A. 479 (1935). Moreover even where it is possible to carry out the particular purpose in the manner prescribed, the fulfillment of the specific intention will not be permitted to frustrate the general charitable intention of the settlor. Cf. St. James Church v. Wilson, 82 N.J. Eq. 546 (Ch. 1913); affirmed on this point sub nom. West v. St. James' Episcopal Church, 83 N.J. Eq. 324 (E. & A. 1914).
In the treatment of charitable trusts it would seem that a distinction has in some cases been drawn between those in which performance is impracticable and those in which it is impossible. That distinction cannot of itself be decisive of the destiny of the trust in all cases because it would ignore the question of the application of the doctrine of cy pres which is one of approximation; that is, where the settlor's original specific purpose fails, his general charitable intent and purpose, if such is evinced, may be effectuated according to law in some other manner "as near as may be" in harmony with the settlor's intentions. MacKenzie v. Trustees, &c., supra; Brown v. Condit, 70 N.J. Eq. 440 (Ch. 1905); 3 Scott on Trusts, § 399 et seq.; 2 Bogert, Trusts & Trustees, 1287, c. 22; 2 Story, Eq. Jur., § 1169.
It is perhaps true in most of such instances that the testator or testatrix has not contemplated the possible failure of his or her particular administrative method, and in the observance of the cy pres doctrine the courts do indulge in a reasonable conjecture of what the donor would have intended if he or she had envisioned the exigency. Obviously, some courts go much further than others in applying the doctrine.
It is, however, the rule that trustees of a charity may not make a cy pres application of the estate upon their own *177 authority, even though it be desirable. MacKenzie v. Trustees, supra; Lakatong Lodge v. Franklin Bd. of Education, 84 N.J. Eq. 112 (Ch. 1915); 2 Bogert, Trusts & Trustees, 1305, § 435.
In fact, the court will not do so sua sponte where the donor has expressly prescribed the disposition to be made of his gift in the event that it cannot be or is not administered by the donee in accordance with the donor's intentions, Guyer v. Trustees of Y.M.C.A. of Trenton, 142 N.J. Eq. 400 (Ch. 1948), or if in such event there is a gift over, Fidelity Union Trust Co. v. Laise, 127 N.J. Eq. 287 (Ch. 1940). It must also be remembered that in applying the doctrine of approximation, the American courts do not have the same freedom of action that was possessed by the English courts when acting in pursuance of the prerogative rather than the judicial right.
We regard the following quotations to be concisely expressive of the true rule applicable to the circumstances of the present case: "If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impractical or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor." 2 Restatement, Trusts, 1208, § 399.
"But if the charitable purpose is limited to a particular object or to a particular institution, and there is no general charitable intent, then, if it becomes impossible to carry out the object, or the institution ceases to exist before the gift has taken effect, and possibly in some cases after it has taken effect, the doctrine of cy pres does not apply, and in the absence of any limitation over, or other provision, the legacy lapses." 5 R.C.L., Charities, § 108; Raque v. City of Speyer, Germany, 97 N.J. Eq. 447 (Ch. 1925).
"A court of equity, under limitations which I need not discuss, will carry out the expressed general charitable purpose *178 of the donor by the use of means other than those specified by the donor when such specified means have become impracticable or impossible of use. But in all such cases there is a general or comprehensive charitable purpose expressly set forth in the will or inferable from its provisions, beyond which the court will not go in its substitution of a practicable for an impracticable means. The court is acting within the donor's charitable purpose, and not beyond it or alongside of it or next to it." Brown v. Condit, supra.
The foregoing quotations only exemplify the fundamental rule of law that infuses the manifest intention of the donor with predominant substantiality.
It seems sufficient to comment only briefly on the subsidiary points of the argument for the appellant. It is emphasized that there are only six words in the entire will to portray an intention to create this alleged charitable trust, viz., "place for the aged and blind." Brevity of expression is often as comprehensible as verbosity. To create a charitable trust it is not imperative to use an "artillery of words." Lord Eldon in Morice v. Bishop of Durham, 10 Ves. 522, stated: "I agree there is no magic in words, and if the real meaning of these words * * * is charity or charitable purposes according to the technical sense in which these words are used in this court, all the consequences follow." Here there is expressly set forth in the will the general and comprehensive charitable purpose to aid the aged and the blind. Contrast, Brezinski v. Breves, 109 N.J. Eq. 206 (E. & A. 1931).
Additionally, our attention is drawn to the circumstance that the trustee declined to serve. It is axiomatic that equity will never suffer a trust to fail for want of a trustee. Bruere v. Cook, 63 N.J. Eq. 624 (Ch. 1902); affirmed, 67 N.J. Eq. 724 (E. & A. 1903); Case v. Hasse, 83 N.J. Eq. 170 (Ch. 1914); N.J. Title Guar. and Trust Co. v. Smith, supra; Martin v. Haycock, supra; 3 Scott on Trusts 2072, § 397.1; 10 Am. Jur., Charities, 603, § 27; p. 611, § 38; p. 667, § 113.
It seems, too, that the successor trustee can properly exercise the powers conferred by the terms of the trust even *179 though they involve the exercise of discretion, unless the testator manifested an intention that the powers should be exercised only by the trustee originally named by him. Levin v. Attorney General, 136 N.J. Eq. 568 (Ch. 1945); 3 Scott on Trusts, 2072, § 397.1.
In conclusion, we resolve that the testamentary trust was created by the testatrix for a charitable purpose, and we discover nothing in the will to indicate that the testatrix intended to terminate the trust if the agency designated by her to administer it declined to function or if the specific mode or means of its contemplated performance failed of attainment. The announced intention of the court to select an agency and other means cy pres to effectuate the identical general charitable object of the testatrix is justified.
Judgment affirmed.