99 N.J. Super. 115 (1968)
238 A.2d 701
THE TOWNSHIP OF CINNAMINSON, A MUNICIPAL CORPORATION; THEODORE M. KOSTOS; MARTIN MARGOLIT AND MARILYN MARGOLIT, HIS WIFE, PLAINTIFFS,
v.
FIRST CAMDEN NATIONAL BANK AND TRUST COMPANY, SUBSTITUTED TRUSTEE SUSAN LIPPINCOTT TRUST FUND; MOORESTOWN FREE LIBRARY ASSOCIATION; RIVERTON FREE LIBRARY ASSOCIATION AND THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided January 25, 1968.
*118 Mr. William B. Colsey, III for plaintiffs (Messrs. Powell and Davis, attorneys).
Mr. Charles F. Richman for defendant First Camden National Bank and Trust Company, substituted trustee Susan Lippincott Trust Fund.
*119 Mr. Charles A. McGeary for defendant Moorestown Free Library Association (Messrs. Bleakly, Stockwell & Zink, attorneys).
Mr. Blaine E. Capehart for defendant Riverton Free Library Association, (Messrs. Capehart and Scatchard, attorneys).
WICK, J.S.C.
This is an action to have the funds of certain testamentary charitable trusts which have been awarded to defendants by order of the court under the doctrine of cy pres now awarded to plaintiffs in accordance with the original special intents of testatrices-settlors of these trusts on the ground that circumstances have now arisen which make fulfillment of that intent possible and practicable. The facts are as set forth below.
Under the will of one Susan W. Lippincott, deceased, of the Township of Cinnaminson, Burlington County, New Jersey, who died on March 20, 1906, provision was made for the establishment of a charitable trust for the purpose of constructing and maintaining a library and reading room and to encourage other educational interests and purposes in the Township of Cinnaminson. The pertinent provisions of the will are as follows:
"3. As to one eighth part thereof (residue) In Trust to pay the same to Henry H. Lippincott, Mary W. Lippincott daughter of my brother Henry H. Lippincott * * * In Trust to invest the said sum, collect the income thereof and permit the same to accumulate until such time as the said one eighth part thereof and accumulated income therefrom shall in the judgment of the said Trustees be sufficient for the purchase of a suitable lot of ground situate within one eighth of a mile if practicable of the intersection of the Burlington Turnpike Road with the Riverton and Moorestown Road in the Village of Westfield, Cinnaminson Township, Burlington County, New Jersey and for the erection thereon of a suitable building of artistic design for a Library and Reading Room, and for the maintenance of the Library and Reading Room aforesaid.
When the amount available for said purposes shall * * * be sufficient therefore upon the further trust to purchase the said lot of *120 ground, to cause to be erected thereon the building hereinbefore mentioned, to maintain the said building, to maintain and manage a Library and Reading Room therein and to encourage such other educational interests and purposes as in the judgment of the said Trustees shall be wise and needful; and to appropriate the net income from any portion of the said sum not required for the purchase of the said lot of ground and the erection of the said building to the maintenance of the said building, to the maintenance of the said Library and Reading Room and the support of the other educational interests and purposes aforesaid." (Emphasis supplied)
The trustees named pursuant to this provision thereafter incorporated and became known as the Cinnaminson Library Association. After more than 35 years of administering the fund, making investments thereof and accumulating interest therein, the trustees, realizing that they were unable to erect a suitable library building, applied to this court in the matter of Cinnaminson Library Association v. Fidelity-Philadelphia Trust Co., Docket No. 148-83 to be relieved as trustees and also for directions providing that the income from this trust fund be forwarded to the Moorestown Free Library Association and the Riverton Free Library Association, both of which institutions supplied library services to the residents of Cinnaminson Township. It appearing that there were no library facilities in Cinnaminson Township, nor was there any likelihood of such services to be provided in the foreseeable future, the court, applying the doctrine of cy pres, appointed the First Camden Bank and Trust Company, Camden, New Jersey, as substituted trustee and directed that the directors invest and reinvest the Lippincott trust fund and pay one-half the net income therefrom semi-annually to Riverton Free Library Association and the remaining one-half to the Moorestown Free Library Association in lieu of the specific provisions set forth in the Susan Lippincott will. This judgment was entered on October 29, 1945. On August 7, 1956 an order of this court was entered amending the aforementioned judgment to allow expenditure of certain income and a part of the principal of the trust *121 for purposes of capital construction and maintenance of the library operated by the Riverton Library Association.
Under the will of one Mary W. Lippincott, an original trustee of the Susan Lippincott fund, provision was made in the ninth paragraph thereof as follows:
"I give and bequeath to the Memorial Library of Cinnaminson, New Jersey, the sum of Five Thousand Dollars, to be paid to the treasurer of the said Library, and to be used toward the construction of a library building, provided, however, that this legacy shall abate and be deemed revoked if I shall have given the said sum of Five Thousand Dollars to the said Library in my lifetime."
There being no "Memorial Library of Cinnaminson" in existence at the time of the demise of Mary W. Lippincott and upon the passage of time, the qualified trustees of the Cinnaminson Library Association petitioned this court in the matter of the Cinnaminson Library Association v. Fidelity-Philadelphia Trust Company, 141 N.J. Eq. 127 (Ch. 1948) for a bill of instructions as to the disposition of the funds under this testamentary trust. On January 26, 1948 a judgment was entered in the matter directing appointment of First Camden National Bank and Trust Company as substituted trustee and under the doctrine of cy pres directing them to pay over one-half the income therefrom each to Riverton Free Library Association and Moorestown Free Library Association in lieu of the specific provision of the will of Mary W. Lippincott. This directive therefore paralled the disposition ordered as to the fund set up by Susan W. Lippincott and both funds have thus been administered together.
Sometime in 1964 the Township of Cinnaminson determined that its residents had need of their own library, and the township therefore undertook construction of a library and cultural center on the Riverton-Moorestown Road, approximately one-eighth of a mile from the road's intersection with the Burlington Turnpike, now known as U.S. Route 130. This facility was opened to the public on April *122 12, 1966. It serves not only the people of Cinnaminson but also citizens of surrounding communities. The total cost of the library and cultural center was approximately $210,000, and to defray this expense the township made application to the Federal Government for a grant, which it received in the amount of $34,425. Under the terms of this federal grant the township is obligated to operate this facility as a library for the next 20 years. The balance of the funds were made up of appropriations from budgets in the township and the issuance of $150,000 in municipal bonds sold on June 13, 1967. The terms of these bonds are for ten years and the annual payments due thereon are a return of principal in the amount of $15,000 together with an average annual interest of approximately $5,000. The library building and cultural center as constructed is owned entirely by the Township of Cinnaminson and contains approximately 13,500 feet of usable space, 7,000 feet of which are used for library purposes, the balance being utilized by residents of the township for meetings and general cultural and educational purposes.
The township entered into a lease with the Burlington County Library Commission for the establishment of a branch of the county library to be operated and maintained in this new library building. Said lease became effective April 19, 1965. Under the terms of the lease the library commission pays the township the actual maintenance cost of the building, including heat, light, water and sewerage, repairs and custodial care. In addition, the commission provides and pays for books, personnel and general library operations. The lease has been renewed for the years 1966 and 1967 and is renewable subject to renegotiation annually.
Plaintiffs assert that the cost to the township and its individual citizens of construction, maintenance and stocking the library facilities can substantially be defrayed if moneys now available from the income and principal of the two trust funds are directed to be paid to the Township of Cinnaminson for purposes of the Cinnaminson Library. They *123 assert that because the Township of Cinnaminson found it feasible and necessary to have their own library and because the testamentary trusts created by Susan and Mary Lippincott were set up for supplying, maintaining and building such a library, the special purpose of these trusts can and should now be effected.
At the outset defendants challenge the status of the individual plaintiffs Theodore M. Kostos, Martin Margolit and Marilyn Margolit to sue in this action. These plaintiffs allege that they are residents of Cinnaminson Township and that they are presently using and in the past used the facilities of the Moorestown Free Library. Upon applying for a renewal of their library card they were informed that they must make a payment of a nonresident member fee in the amount of $7 per person, $10 per family. Plaintiff Marilyn Margolit also made application to the Riverton Library for a membership card and was informed that she must pay a $2 fee if she could not obtain the personal endorsement of a member of the Riverton Free Library Association. Apparently these allegations were made in order to establish that these plaintiffs were aggrieved parties by reason of the fact that they, residents of Cinnaminson who were the intended beneficiaries under both funds, were being charged the aforementioned fees by the very institutions that were reaping the benefits of these funds under the cy pres disposition of the court. Although such a basis for establishing status to sue in an action of this nature is argumentative, this court finds the required status on different grounds. A fair appraisal of the facts and circumstances of the instant case would indicate that this action can be characterized in two ways. It is a case requiring construction of a testamentary trust to determine whether the facts as stipulated meet the terms of the trust as set forth by these two wills; it is also a case for the enforcement of a charitable trust in accordance with the special intent of the testatrices as set forth in their wills and in avoidance of the dispositions ordered by this court under the doctrine of cy pres.
*124 It goes without saying that the question of status to sue must be determined with the nature of the action in mind. An examination of the law in this jurisdiction indicates that an individual is a proper party to an action for construction or interpretation of a will or trust if he is an "interested party." See N.J.S. 2A:16-53; N.J.S. 2A: 16-55(c), cf. N.J.S. 2A:16-56. An individual is an interested party if, under the construction or interpretation urged by him, he may become a legatee or beneficiary under the will or trust. See, e.g., Potter v. Watkins, 99 N.J. Eq. 538 (Ch. 1926), and Snyder v. Taylor, 88 N.J. Eq. 513 (Ch. 1918), both of which interpret section 7 of the Chancery Act of 1915 (L. 1915, p. 185), forerunner to N.J.S. 2A:16. Under the construction and interpretation urged by the individual plaintiffs, the Township of Cinnaminson would be the direct legatee as trustee of the moneys intended to fund the library in that township. Since the citizens and taxpayers of the township are the ultimate benefactor of the library therein, it follows that they are in effect to receive the benefit of these funds if the will were enforced according to their construction. Furthermore, since the township is in reality nothing more than the governmental representative of its citizens, any legacy bequeathed or devised to it for the direct benefit of its citizens is by implication a legacy to the individual citizens. See Montclair Nat'l Bank and Trust Co. v. Seton Hall College of Medicine, 90 N.J. Super. 419 (Ch. Div. 1966), reversed on other grounds, 96 N.J. Super. 428 (App. Div. 1967), where it was stated that the true beneficiaries of a gift to the medical school are the students thereof.
Nor is this the only ground upon which the court resolves this issue of status. As mentioned earlier, the case at bar can also be characterized as a suit for enforcement of a charitable trust. Plaintiffs seek to avoid the disposition of the funds as ordered by this court under the doctrine of cy pres, and to enforce the charitable trust in accordance *125 with the special intent of the testatrices as set forth by their wills.
"* * * [T]he rule is that enforcement of the [charitable] trust is to be had by the Attorney-General, by a trustee or by one having a special interest in its enforcement, * * *" Di Cristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244, 250 (1957) (emphasis supplied).
Many jurisdictions require that the special interest referred to above be something more than a mere beneficial interest as one of a class of beneficiaries; that is, the complainant must be able to show that he is entitled to receive a benefit which is not merely a benefit to which the members of the public in general are entitled. See generally 4 SCOTT ON TRUSTS (2d ed. 1956) 391, p. 2758. Although it is true that a trust for the benefit of definite persons is not a charitable trust, nevertheless definite persons may be entitled to receive certain benefits under the trust. Thus, where a trust is created to pay or contribute toward payment of the salary of a minister of a particular church, the minister can maintain a suit to compel the trustees to pay him the amount specified by the terms of the trust. Ibid., citing First Congregational Society in Raynham v. Trustees, 23 Pick. 148, 40 Mass. 148 (Sup. Ct. 1839), in support of this illustration. The trust is a charitable trust because it is for the promotion of religion, which is a benefit to the community generally, but the minister for the time being has a special interest in the performance of the trust.
There are certain jurisdictions, however, which permit the members of the general benefited class to bring suit to compel enforcement. New Jersey is such a jurisdiction. Thus, in Larkin v. Wikoff, 75 N.J. Eq. 462, 474 (Ch. 1909), affirmed 77 N.J. Eq. 589 (E. & A. 1910), certain church property was conveyed to trustees to be used for gospel preachings and religious services free to all people of a particular neighborhood. After some time the trustees resolved that it was expedient to discontinue and abandon *126 use of the church for these purposes. Several members of the community brought an action for enforcement of the trust in accordance with its terms. Responding to the challenge of status of these individual plaintiffs, the court concluded that as members of the class of cestui que trust, they had standing. The court also stated:
"The general practice seems to be that a bill of this sort in a matter of public trust is filed by the Attorney General, either on his own motion or on the relation of some parties interested. In this case the parties interested have presented the bill and have made the Attorney General a party defendant thereto. No objection to this course having been made by the Attorney General, I think the proper parties are before the court, and that it is immaterial that the Attorney General is a defendant instead of a complainant." (75 N.J. Eq., at p. 473)
This case was cited with approval in Leeds v. Harrison, 15 N.J. Super. 82 (Ch. Div. 1951), reversed on other grounds N.J. 202 (1952), where it was stated that as cestui que trust, individuals have a right to the aid of the court in supervision of the trust and enforcement of their rights to participate in that capacity; they are sufficiently interested so as not to be considered strangers. Even assuming (without deciding) that the trust was intended to benefit all the residents of the area of Cinnaminson as was alleged by defendants, rather than merely the residents of Cinnaminson proper, it cannot be denied that the three individual plaintiffs are intended beneficiaries of the trust. Therefore, this court finds that the individual plaintiffs have standing to sue for enforcement of the trust in accordance with its original terms.
Having decided that the individual plaintiffs have standing to sue, the next question becomes one of whether once the doctrine of cy pres has been applied, the exact terms of the trust can later be revived when facts and circumstances become such that the original special intent of the testator becomes practicable. If that question is decided in the affirmative, it then becomes the duty of this court to *127 determine whether the facts of the instant case actually conform to the special intent of Susan and Mary Lippincott.
Under the doctrine of cy pres, where property is given in trust for a charitable purpose, the trust often will not fail even though it is impossible or impractical to carry out its exact purpose. See, e.g., Howard Savings Institution v. Peep, 34 N.J. 494 (1961); Mirinda v. King, 11 N.J. Super. 165 (App. Div. 1951). In such a case the court will ordinarily direct that the property be applied to a similar charitable purpose, the theory being that if the testator had realized that the gift according to his special purpose would be frustrated, he would have ordained an alternate disposition according to his more general charitable plan. See Wilber v. Owens, 2 N.J. 167, 177 (1949). In order to invoke this doctrine it must appear that the special purpose as set forth by the testator was not intended to be exclusive; that is, that he had a more general charitable purpose than the stated purpose as directed by the express terms of the trust. Rowe v. Davis, 138 N.J. Eq. 122 (Ch. 1946). If this general charitable intent is lacking, the gift will ordinarily lapse where conditions existing at the time of testator's death make the stated charitable purpose impossible, impractical or illegal. Howard Savings Institution v. Peep, supra. This court had previously concluded that since the purpose of both Lippincott trusts, namely, to erect, maintain and stock a free library in the Township of Cinnaminson, were impossible, and because a more general charitable intent was also evidenced by the provision of the wills creating these trusts, invocation of the doctrine of cy pres was proper. It was through this determination that defendants received the use of these funds. Now plaintiffs claim that the testatrices' special intent can be satisfied and that the original terms of the trust should be revived. This court does not agree.
It is axiomatic that the primary function of the court is to enforce the expressed intent of the testator. It is precisely for this reason that the trustees of a charity may *128 not make a cy pres application of the estate upon their own authority. See Lackatong Lodge v. Franklin Board of Ed., 84 N.J. Eq. 112 (Ch. 1915). Application must be made to the court for such action as it is felt the court is best equipped to determine what the testator's intent is and whether it can be effected. It is only after a careful consideration of all pertinent facts and circumstances as presented at trial that these determinations are made. Every effort is made toward effecting the testator's specific intent as expressed by him, and it is only when it is proven to the court's satisfaction that realization of this intent is impossible, impractical or illegal that the doctrine of cy pres is invoked. Mirinda v. King, supra. If there are any doubts as to the possibility of enforcing the testator's intent, a reasonable time is given during which these doubts might be resolved before applying the doctrine. In short, it is only after all of these safeguards that the testator's more general intent is substituted.
Taking all of these factors into consideration, this court does not feel that the original specific intent of the testator should be revived upon the subsequent feasibility of its accomplishment. This is especially true when, as in the instant case, the possibility of effecting this specific intent does not present itself until more than 15 years after cy pres has been applied. To rule otherwise would be to open challenge to application of this doctrine ad infinitum. The judgment of the court would never be finalized, nor could the recipient of funds awarded under the doctrine justifiably rely thereon. The entire doctrine of cy pres was developed out of recognition of the social benefit to be derived from devoting of property to charitable purposes, the policy being to preserve charitable trusts whenever possible. Mirinda v. King, supra, at p. 173. This court cannot believe that it was intended that the recipient of this social benefit under cy pres would be deemed to be a conditional recipient, the condition being that the original intent of the testator not become feasible at some later time. If this *129 were so, the social benefit to be derived by the substituted charity would be plainly limited, for never could the recipient make full use of these funds with the possibility of their loss looming in the future. Indeed, planning and operations for the present necessarily depend largely upon foreseeable financial certainty and stability which, if plaintiffs' viewpoint prevails, would be lacking.
It must also be remembered that were it not for application of the doctrine of cy pres, a determination that the testator's intent was impossible would result in lapse of the impossible provision. See, e.g., In re Stevens Estate, 18 N.J. Super. 176 (Ch. Div. 1952); McKiernan v. Beardslee, 72 N.J. Eq. 283 (Ch. 1906). Certainly, no one would assert that funds distributed to residual legatees (or to whomever the testator provided for) in the event of lapse should some 15 to 20 years after this distribution be redistributed because it then becomes feasible to effect the lapsed provision. There is no reason for reaching a different conclusion when lapse is prevented only due to the court's policy of preserving charitable trusts.
Since it is the court's decision that there can be no revival of the original terms of the testatrices' wills, it becomes moot to determine whether that intent is met by the facts and circumstances as presented in this case.
Judgment will be entered accordingly.